# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## No. 22-13945-B

---

ELIE NEHME,

*Plaintiff-Appellant*,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

*Defendant-Appellee*.

---

Appeal from the United States District Court,
Southern District of Florida

L.T. No.: 20-cv-24649-CANNON

---

## APPELLANT'S INITIAL BRIEF

---

Roderick V. Hannah, Esq.
**RODERICK V. HANNAH, ESQ., P.A.**
*Counsel for Appellant*
4800 North Hiatus Road
Sunrise, Florida 33351-7919
Telephone:  (954) 362-3800
Facsimile:   (954) 362-3779
rhannah@rhannahlaw.com

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELIE NEHME,

    Appellant,

vs.                         CASE NO. 22-13945-B

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

    Appellee.

_____/

## **APPELLANT'S CERTIFICATE OF INTERESTED PARTIES**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellant Elie Nehme hereby certifies that the following persons and entities may have an interest in the outcome of this case:

1. Florida International University Board of Trustees – Appellee

2. Roderick V. Hannah, Esq. – Appellant's current counsel

3. Roderick V. Hannah, Esq., P.A. – Appellant's current counsel

4. Oscar E. Marrero, Esq. – Appellee's prior counsel

5. Marrero & Wydler – Appellee's prior counsel

6. Wydler Law – Appellee's current counsel

7. Elie Nehme – Appellant

8. Lourdes E. Wydler, Esq. – Appellee's current counsel

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests that oral argument be granted as it will likely prove helpful in deciding this appeal. This case involves numerous pieces of documentary evidence and deposition testimonial evidence that have been submitted by both sides in support of the parties' respective written and oral arguments presented first to the Magistrate Judge and then to the District Court Judge on Appellee's Motion for Summary Judgment. Oral argument thus will be helpful to the extent that it is likely, as both the Magistrate Judge and District Court Judge recognized in holing oral arguments, to address any specific factual and evidentiary issues and questions this Court may have in conducting its *de novo* review of the merits of Appellee's underlying Motion, and in considering the merits of the District Court Judge's decision on appeal. It is, therefore, submitted that oral argument would greatly enhance and facilitate the Court's understanding of the various evidentiary, testimonial, and legal issues that have been raised in ultimately rendering its final decision here.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...............................................C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ……………………………..iii

TABLE OF CONTENTS ...........................................................................................iv

TABLE OF CITATIONS  ..........................................................................................vi

JURISIDICTIONAL STATEMENT……………………………………………...1

STATEMENT OF ISSUES ........................................................................................2

STATEMENT OF THE CASE AND THE FACTS ....................................................3

SUMMARY OF THE ARGUMENT .......................................................................19

ARGUMENT .............................................................................................................22

**I.**	**THE DISTRICT COURT ERRED IN REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY APPELLEE SUMMARY JUDGMENT AND IN ENTERING SUMMARY JUDGMENT IN APPELLEE'S FAVOR AS THERE WAS SUFFICIENT RECORD EVIDENCE TO SUPPORT THAT APPELLANT WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER TITLE II OF THE ADA.** ..........................................................................22**

**II.**	**THE RECORD EVIDENCE WAS SUFFICIENT TO DEMONSTRATE THAT TRIABLE ISSUES OF MATERIAL FACT REMAINED AS TO APPELLANT'S  FAILURE TO ACCOMMODATE AND WRONGFUL DISMISSAL CLAIMS UNDER TITLE II OF THE ADA, AND THAT THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY APPELLEE SUMMARY JUDGMENT ON THESE ISSUES SHOULD HAVE BEEN ADOPTED AND SUMMARY JUDGMENT DENIED.** ……………………………………………………………………….32

**A.** ***There were genuine issues of material fact that FIU failed to provide Plaintiff with the required testing accommodations for his Psychiatry shelf exam retake.*** …………………………..32

**B.** ***There were genuine issues of material fact that support Plaintiff's claim that his appeal was denied and he was dismissed from HWCOM because of his disability.*** ……………………….......39

**C.** ***There were genuine issues of material fact that FIU Acted with deliberate indifference in both failing to accommodate Nehme for his Psychiatry exam retake and in ultimately dismissing Him.*** ……………………………………………………………….42

CONCLUSION ......................................................47

CERTIFICATE OF COMPLIANCE ...........................48

CERTIFICATE OF SERVICE ..................................49

# TABLE OF CITATIONS

## CASES

**Page Nos.**

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986)…………………………22

*Cooney v. Barry Sch. Of L.,*

    720 F. App'x 571 (11th Cir. 2018)……………………………………24

*Forbes v. St. Thomas Univ., Inc.,*

    456 F. App'x 809 (11th Cir. 2012)……………………………………24

*Forbes v. St. Thomas Univ., Inc.,*

    768 F.Supp.2d 1222 (S.D. Fla. 2010)………………………………33, 38, 39

*Frazier-White v. Gee,*

    818 F.3d 1249 (11th Cir. 2016)………………………………………39

*Georgia Power Co. v. ABB, Inc.,*

    No. 4:17-CV-00125-HLM, 2019 WL 11505721

    (N.D. Ga. Feb. 27, 2019)……………………………………………36

*Goldberg v. Fla. Int'l Univ.,*

    838 F. App'x 487 (11th Cir. 2020)……………………………………23, 24

*Henrietta D. v. Bloomberg,*

    331 F.3d 261 (2nd Cir. 2003)…………………………………………39

*Holly v. Clairson Indus., L.L.C.*,

    492 F.3d 1247 (11th Cir. 2007)…………………………………………..34

*Kelley v. Hicks*,

    400 F.3d 1282 (11th Cir. 2005)………………………………………….42

*Liese v. Indian River Cty. Hosp. Dist.,*

    701 F.3d 334 (11th Cir. 2012)…………………………………………42, 43, 45

*Loeffler v. Staten Island Univ. Hosp,*

    582 F.3d 268 (2d Cir. 2009)…………………………………………….43

*Lucas v. W.W. Grainger, Inc.,*

    257 F.3d 1249 (11th Cir. 2001)…………………………………………34

*Martin v. Halifax Healthcare Sys., Inc.,*

    621 F. App'x 594 (11th Cir. 2015)……………………………………18, 42

*McKane v. UBS Financial Services, Inc.,*

    363 Fed. App'x 679 (11th Cir. 2010)…………………………………34

*Melton v. Abston,*

    841 F.3d 1207 (11th Cir. 2016)…………………………………………22

*Onishea v. Hopper*,

    171 F.3d 1289 (11th Cir. 1999)…………………………………………24

*Ray v. Ford Motor Co.,*

   No. 3:07CV175-WHA-TFM, 2011 WL 6749034

   (M.D. Ala. Dec. 23, 2011)…………………………………………36

*Redding v. Nova Southeastern Univ., Inc.*

   165 F. Supp. 3d 1274 (S.D. Fla. 2016)…………………………….17, 19, 33

*Schwarz v. City of Treasure Island,*

   544 F.3d 1201, 1209 (11th Cir. 2008)……………………………..33, 34

*Segev v. Lynn Univ., Inc.,*

   No. 19-CV-81252-Cannon/Reinhart, 2021 WL 2269838

   (S.D. Fla. Feb. 6, 2021)…………………………………………45

*Twiss v. Curry,*

   25 F.3d 1551 (11th Cir. 1994)……………………………………..22

*Williams v. Asplundh Tree Expert Co.,*

   No. 3:05-cv-479-J-33MCR, 2006 WL 2868923

   (M.D. Fla. Oct. 6, 2006)…………………………………………..36

*Zainulabeddin v. Univ. of S. Fla. Bd. Of Trs.,*

   749 F. App'x 776 (11th Cir. 2018)………………………………..19, 24

# STATUTES, REGULATIONS, AND RULES

**Page Nos.**

Title II of the Americans with Disabilities Act,

    42 U.S.C. § 12132……………………………………………..1, 2, 5, 6, 17, 18, 19, 20, 21, 22, 23, 32, 33, 38, 42, 45, 47

Americans with Disabilities Amendments Act………………………1

28 U.S.C. § 1291………………………………………………1

28 U.S.C. § 1331………………………………………………1

Federal Rule of Evidence 801……………………………………37

29 C.F.R. § 1630.2(o)(3)………………………………………3939

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §1331, federal question, because Appellant's claims were brought pursuant to a federal statute: Title II of the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA"), as amended by the Americans with Disabilities Amendments Act ("ADAAA").

The basis of this Court's appellate jurisdiction is 28 U.S.C. §1291 as this case is an appeal from the District Court's Order granting Defendant's Motion for Summary Judgment as to Appellant's Amended Complaint [DE 90] and the District Court's resulting entry of a final judgment of dismissal of the case with prejudice based on the findings in that Order [DE 91].

This appeal is timely as the final judgment of dismissal of the Amended Complaint was filed on November 7, 2022, and Appellant's notice of appeal was filed on November 23, 2022 [DE 92], within the 30-day period allowed by Federal Rule of Appellate Procedure 4.

# <u>STATEMENT OF THE ISSUES</u>

1. Whether the District Court committed reversible error in rejecting the Magistrate Judge's Report and Recommendation to deny Appellee summary judgment and then entering summary judgment in Appellee's favor based on a finding that the undisputed material facts demonstrated Appellant was not a qualified individual with a disability for purposes of Title II of the ADA when Appellant had presented sufficient record evidence that he was a qualified individual with a disability.

2. Whether sufficient record evidence was presented that triable issues of material fact exist as to Appellee's failure to accommodate and wrongful dismissal claims under Title II of the ADA such that the Magistrate Judge's Report and Recommendation finding such triable issues of material fact existed should have been adopted by the District Court and summary judgment should have been denied.

## STATEMENT OF THE CASE AND THE FACTS

Appellant Elie Nehme ("Nehme") was in his third period (i.e., his third year) as a medical student at Florida International University's ("FIU") Herbert Wertheim School of Medicine ("HWCOM") when the events that led to his involuntary dismissal from the school, and that form the basis of his underlying legal claims, took place. Nehme matriculated at HWCOM in August 2016. [D.E. 79 p. 3; D.E. 58 ¶ 1]. The medical school program consists of four periods [D.E. 56 ¶ 1; D.E. 64 ¶ 1]. As a condition of matriculation, Nehme, as did all HWCOM students, agreed to abide by HWCOM's Medical Student Handbook (the "Handbook") [D.E. 79 p. 3; D.E. 56 ¶ 1; D.E. 64 ¶ 1].

During his first year of medical school ("Period 1"), Nehme initially failed the Genes, Molecules, and Cells course but he remediated this failure by retaking and passing the exam and the course. [D.E. 79 p. 4]. Despite this one failed and remediated course, Nehme successfully completed his first year of medical studies at HWCOM in May 2017, and was approved for and advanced to his second year of studies ("Period 2"). [D.E. 64 ¶ 5].

After commencing Period 2, Nehme failed an entire course, Cardiovascular and Respiratory Systems, by failing both the final exam and its retake. [D.E. 64 ¶ 4]. Around the same time, in July 2017, Nehme was referred and underwent testing for learning disabilities at FIU's Medical Student Counseling and Wellness

Center ("MSCWC"). [D.E. 58 ¶ 3]. The MSCWC diagnosed Nehme with two learning disabilities: Unspecified Anxiety Disorder and Attention-Deficit Hyperactivity Disorder. [*Id.*]. Nehme was then referred to FIU's Disability Resource Center ("DRC"), which, on July 28, 2017, granted Nehme two accommodations based on his diagnosed disabilities: "50% extra time on exams" and a "Minimal Distraction Testing Room". [D.E. 58 ¶ 4].

On July 27, 2017 -- one day prior to the DRC's issuance of its directive that Nehme be provided the testing accommodations – Nehme appeared for the first time for hearing before HWCOM's Medical Student Evaluation and Promotion Committee ("MSEPC"). [D.E. 56 ¶ 11; D.E. 64 ¶ 11]. In this first MSEPC hearing, Nehme informed the committee members that he was experiencing health issues, that he would benefit from extra time on testing due to his processing speed, and that he was working with the MSCWC to address the processing speed issue. [*Id.*]. Following the hearing, the MSEPC placed Nehme on "academic probation" but allowed him to continue in Period 2 with the class of 2020 and to retake the Cardiovascular and Respiratory Systems course with the class of 2021. [D.E. 56 ¶ 13; D.E. 64 ¶ 13]. The MSEPC also notified Nehme that, in accordance with the Handbook, "any further course failure or continued poor performance would trigger review by the MSEPC with the possibility of adverse recommendations, including repeating an academic year or dismissal." [*Id.*].

After resuming Period 2, Nehme was the subject of a Professionalism Incident Report ("PIR") regarding concerns over multiple unexcused absences in several courses, multiple requests to delay exams in several courses, and a professionalism issue regarding a quiz in one course. [D.E. 56 ¶ 14; D.E. 64 ¶ 14].

Also after resuming Period 2, Nehme failed another final exam, this time in Systems Based Practice. [D.E. 56 ¶ 15; D.E. 64 ¶ 15]. Significantly, Nehme was not provided his required accommodation for this exam nor was he allowed to take the remediation exam to pass the course, even though all HWCOM students, per the Handbook, are entitled, without limit, to retake final exams after failing the final exams on the first try. [D.E. 64 ¶ 15]. Instead, Nehme, at his request and for personal medical reasons, went on an approved voluntary leave of absence from HWCOM from January 18, 2018, until April 2, 2018. [*Id.*].[1]

On March 8, 2018, while on the leave of absence, Nehme was called before the MSEPC for a second hearing, this time triggered by the PIR and Nehme's failure of the Systems Based Practice course (which had resulted from his failure

---

[1] It should be noted that the District Judge, in her recitation of the material facts in her Order granting summary judgment in FIU's favor, incorrectly stated the timing of events involving Nehme's approved leave of absence and his attendance at the second MSEPC hearing. The District Judge stated that Nehme's approved leave of absence commenced ***after*** the second MSEPC hearing [*See* D.E. 90 p. 3] when it is an undisputed fact that Nehme was already on his approved leave of absence when he was called before the MSEPC a second time. [D.E. 56 ¶ 16; D.E. 64 ¶ 16].

of the first take of the course's final exam). [D.E. 58 ¶ 5; D.E. 64 ¶ 16]. Because he was aware that his leave of absence would affect his ability to continue with his Period 2 class and that he also needed to take care of his personal medical issues to avoid future class absences, Nehme offered, in a pre-MSEPC hearing meeting with Dean Adrian Jones and Dr. Nancy Havas, to repeat his entire second year to allow him to properly continue his medical studies. [D.E. 64 ¶ 15].

On March 8, 2018, Nehme attended the second MSEPC hearing to discuss his prior failure of the Systems Based Practice course and the PIR. [D.E. 58 ¶ 5]. Following this hearing, the MSEPC determined that Nehme would be permitted to repeat his entire Period 2 as he had requested, and to join the class of 2021 on April 2, 2018, when he returned from the leave of absence. [D.E. 58 ¶ 5; D.E. 64 ¶ 16]. Nehme also would continue being on an "academic probation" status. [D.E. 58 ¶ 13; D.E. 64 ¶ 13].

Upon the conclusion of his leave of absence, Nehme returned to HWCOM and retook and successfully completed his entire Period 2 without any exam or course failures and without any further professionalism incidents. [D.E. 58 ¶ 6; D.E. 64 ¶ 14]. Significantly, for his entire Period 2, Nehme tallied a term GPA of 84.27, which, according to the Handbook, evidenced his overall "competency" as an HWCOM medical student. [D.E. 64 ¶ 17]. Indeed, except for two passing grades of 79 and 76 and two "pass/fail" courses that he passed, Nehme received

grades in all his other Period 2 courses – 12 in total -- in the 80s and 90s. [*Id.*].

Nehme also had a cumulative GPA at HWCOM of 81.27 for both Periods 1 and 2

combined, again evidencing his overall "competency" as an HWCOM medical

student per the Handbook. [*Id.*]. As a result of his successful completion of Period

2, Nehme was promoted from Period 2 to Period 3. [D.E. *Id.*]. This promotion

decision was made by the MSEPC, which per the Handbook was and is the sole

arbiter for HWCOM student promotion decisions. [D.E. 64 ¶ 5]. The MSEPC's

promotion decision evidenced its determination that Nehme had achieved

"satisfactory academic performance" sufficient to be promoted from Period 2 to

Period 3. [*Id.*].

Period 3 at HWCOM involved medical students taking a rotation of core

clinical clerkships in various areas of study. [D.E. 56 ¶ 19; D.E. 64 ¶ 19]. While

Nehme performed extremely well in the hands-on, clinical portion for each

clerkship he took, he encountered some difficulties in his performance on some of

the clerkship final exams. [D.E. 64 ¶ 20]. Specifically, Nehme had either poor or

failing shelf exam performances in four clerkships: Family Medicine, Surgery,

Neurology, and OB/GYN. [D.E. 56 ¶ 20; D.E. 64 ¶ 20]. However, with allowed

final exam retakes, Nehme passed each of these clerkships, receiving overall

grades of 89 in Family Medicine, 88 in Surgery, 83 in Neurology, and 83 in

OB/GYN. [D.E. 64 ¶ 20; D.E. 63-1 p. 218]. These grades, per the Handbook, evidenced Nehme's overall "competency" in the clerkships. [D.E. 64 ¶ 20].

Except for one pass/fail clerkship that he passed, Nehme passed all his Period 3 clerkships with grades in the 80s up until the time he took and failed the final exam in the Psychiatry clerkship – the course and final exam retake that are at the center of this case. [D.E. 64 ¶ 20]. Because of his course grades in the Period 3 clerkships that he took and passed, Nehme had a Period 3 term GPA of 86.23, which raised his cumulative GPA for all three periods at HWCOM to 82.62, again evidencing his "competency" as a medical student by the Handbook's standards. [*Id.*]. Moreover, Nehme did extremely well, with only positive physician evaluations and no negative ones, in the very important clinical component -- i.e., the patient diagnosis and treatment component – for each of the clerkships, including the Psychiatry clerkship. [*Id.*]. Significantly, the clinical components for each clerkship carried the same 30% course weights for the student's overall clerkship grades as the final exams. [*Id.*].

The Handbook provided that (1) "failure of a clerkship or poor shelf exam performance, such as three shelf scores in the 5–10 percentile range, ***may*** also result in review by the MSEPC"; and that (2) "poor clinical performance that does not meet expectations, based on academics and/or professionalism, can result in a recommendation by the MSEPC for repeating the year or for dismissal" [D.E. 55-7

p. 5 (emphasis supplied)]. Although Nehme failed his final exams in Family Medicine, Surgery, Neurology, and OB/GYN when he first took them, he retook and received passing scores for the final exams for the clerkships. [D.E. 56 ¶ 20; D.E. 64 ¶ 20]. In retaking the final exams, Nehme scored in the low 5-10 percentile range on only *one*, i.e., the Neurology final exam retake. [*Id.*]. As stated above, Nehme also did extremely well in his clinical performance for each of the clerkships he took. [D.E. 64 ¶ 20].

Even though the Handbook provided that a student's low percentile scoring on three shelf exam "*may* also result in review by the MSEPC", Nehme was not called before the MSEPC based on his final exam scores in his clerkships. Rather, the uncontroverted record and testimonial evidence presented below showed that the *sole* event that triggered Nehme being called before the MSEPC for a third and final time was his failure of the Psychiatry clerkship final exam and exam retake, and his resulting failure of the Psychiatry clerkship. [D.E. 64 ¶ 44].

Nehme first took the Psychiatry clerkship shelf exam on February 17, 2020, and failed it. [D.E. 58 ¶ 7; D.E. 56 ¶ 21; D.E. 64 ¶ 21]. When he first took the shelf exam, he was properly accommodated for his disabilities. [D.E. 56 ¶ 21; D.E. 64 ¶ 21]. However, when Nehme retook the shelf exam, HWCOM placed him in a room, Room AHC2 495, that did not meet the requirements of a "minimal distraction room", one of the reasonable accommodations for Nehme's disabilities

that the DRC, and hence HWCOM, had granted him [D.E. 64 ¶¶ 23, 28, 29, 42, 43].

Specifically, while retaking the final exam in room AHC2 495, Nehme encountered numerous visual, auditory, and environmental distractions in and around room AHC2 495. [D.E. 64 ¶ 42]. Room AHC2 495 had windows on both sides, was next to a busy hallway where administrative offices and OSCE simulation rooms were located and was close to the elevator. [*Id.*]. Nehme testified in his deposition that, while he was seated with his back to the large, frosted hallway window in the room, he could see student faces and shapes passing in the hallway from his "periphery". [*Id.*]. Nehme further testified that the movement of students in the hallway was constant throughout the exam and the people in the hallway were walking, yelling, and talking. [*Id.*]. Nehme also testified that the constant noise and movement from the hallway caused him to lose focus and was very distracting, and that, even though he had earplugs in, he still could hear people talking and yelling outside. [*Id.*]. Nehme acknowledged that at some point in time a heater was brought into the room. [*Id.*]. During the exam, Nehme would look up at Innah Lachica ("Lachica"), the exam proctor assigned to the room, to express his frustration but Lachica took no action. [*Id.*]. Nehme did not alert Lachica to the many distractions because he was trying his best to focus

and did not know he had the option to stop the exam or request a room change. [*Id.*].

Lachica in deposition confirmed the numerous distractions both inside and outside of Room AHC2 495 while Nehme took the exam. [D.E. 64 ¶ 43]. She confirmed the room was not the preferred room for accommodations because of its location near a large conference room, stairs, and an elevator, and because of the room's freezing cold temperature. [*Id.*]. She agreed that no student should have been assigned to the room as a minimal distraction room on the date in question given the other events scheduled to take place outside the room. [*Id.*]. Lachica testified further that the room had a large translucent window occupying approximately 80% of the wall that had gaps through which one could see into the hallway. [*Id.*]. Lachica also testified that one could see the shapes and shadows of people through the window and could hear the noise of people talking loudly in the hallway as they walked by. [*Id.*]. She confirmed that there was a lot of noise and movement distractions during the exam to the point that even she was distracted. [*Id.*]. She testified that she observed and experienced both auditory and visual distractions, including groups and crowds of people as often as every 15 minutes passing by and talking loudly over each other and at the same time. [*Id.*]. Lachica also stated that, although she put a sign on the door for people to be quiet, they ignored the sign. [*Id.*]. Lachica further confirmed that the room was "freezing

cold", that she believed the temperature to be a distraction to Nehme, and that she ordered a heater be brought into the room which involved the added distraction of its setup. [*Id.*]. Lachica also testified to an additional significant auditory distraction during the exam: a hallway loudspeaker that repeatedly announced when students in the hallway could return to their OSCE simulation rooms. [*Id.*]. Although Lachica was aware of these numerous distractions, and although she had the responsibility and authority to tell those in the hallway to be quiet, stop the exam, or request a room change – which she admitted she could have done -- she chose to do nothing at all (except make the request for the room heater). [*Id.*]. Lachica's only excuse for not taking action to help Nehme avoid the distractions was that she was afraid it would cause even more distractions, even though she could have notified another employee, Maritere Williams, about the situation by computer as she had done with the room temperature situation. [*Id.*].

Because Room AHC2 495 failed as a required "minimal distraction room" when Nehme retook the Psychiatry clerkship final exam, Nehme failed the exam retake and the clerkship. [D.E. 64 ¶ 46]. Solely because of the Psychiatry clerkship failure, Nehme was called before the MSEPC for the third time on April 9, 2020. [D.E. 64 ¶ 44]. During this third MSEPC hearing, Nehme failed to mention that Room AHC2 495 had not been a minimal distraction room. [D.E. 56 ¶ 30; D.E. 64 ¶ 30]. Instead, he stated that there was a fire in his neighbor's apartment on the

morning of the exam retake, which had affected his performance. [*Id.*]. His previous academic performance was also discussed at the hearing. [*Id.*]. Following the hearing, the MSEPC found that Nehme's academic performance continued to be of grave concern and recommended that he be given the opportunity to voluntarily withdraw from HWCOM or be involuntarily withdrawn. [D.E. 56 ¶ 31; D.E. 64 ¶ 31].

Nehme appealed the MSEPC's recommendation to HWCOM's Appeals Committee. [D.E. 56 ¶ 32; D.E. 64 ¶ 32]. He again mentioned the fire affecting his performance on the Psychiatry shelf exam retake and his father's medical issues affecting his performance on the initial Surgery shelf exam. [*Id.*]. Nehme also introduced new information relating to a car accident that occurred during the Family Medicine clerkship that required numerous physical therapy sessions affecting his performance on the initial Family Medicine shelf exam. [D.E. 56 ¶ 33; D.E. 64 ¶ 33]. He further introduced new evidence of a random drug test conducted one week prior to the Psychiatry shelf exam retake adding unnecessary stress while studying for the exam. [*Id.*]. He added due process concerns such as the conduction of the MSEPC hearing over Zoom due to the pandemic rather than in person and the fact that Dr. Helen Tempest inappropriately acted as the Chair of the MSEPC during his hearing. [*Id.*]. On May 5, 2020, the Appeals Committee

denied Nehme's appeal and adopted the MSEPC's recommendations, which HWCOM's Dean Sackstein then affirmed. [D.E. 58 ¶ 34; D.E. 64 ¶ 34].

On May 15, 2020, Nehme appealed the Dean's determination to the FIU Provost's designee, Dr. Elizabeth Bejar ("Dr. Bejar"), FIU's Senior Vice President for Academic and Student Affairs. [D.E. 58 ¶ 35; D.E. 64 ¶ 35]. In this final appeal, Nehme raised the issue that he had not been properly accommodated for his Psychiatry shelf exam retake. [*Id.*]. Dr. Bejar forwarded Nehme's complaint to FIU's Office of Inclusion, Diversity, Equity, and Access ("IDEA") to investigate his disability, failure to accommodate claims. [*Id.*]. Nehme thereafter formally filed a disability discrimination complaint with the IDEA. [D.E. 58 ¶ 36; D.E. 64 ¶ 36].

The IDEA thoroughly investigated Nehme's complaint through Shirlyon McWhorter ("McWhorter"), the IDEA's Director, and Valerie Hall ("Hall"), an experienced discrimination investigator, both of whom were FIU employees. [D.E. 64 ¶ 45]. Following the investigation, which involved the review and documentary evidence and witness interviews, McWhorter and Hall on behalf of the IDEA, and under McWhorter's signature, issued both an initial report and an amended report of the investigation and their findings and conclusions. [*Id.*]. Both reports thoroughly analyzed Nehme's claims of discrimination, and made significant findings, including: (1) that Nehme was a qualified individual with a disability

within the meaning of the ADA; (2) that Nehme's placement in room AHC2 495 for the Psychiatry shelf exam "did not meet the standard for a minimal distraction room identified by the ADA and this impacted his ability to concentrate while taking the … exam which violated his disability testing accommodation"; (3) that Nehme "did not receive testing accommodations for pop quizzes/readiness assignments"; and (4) that HWCOM did not have legitimate non-discriminatory reasons for denying Nehme his accommodations. [*Id.;* D.E. 63-1 pp. 37, 72].

Both versions of the IDEA's investigative reports were sent to Dr. Bejar who purportedly thoroughly reviewed them and the findings therein. [D.E. 64 ¶ 50]. Notwithstanding the reports' findings that Nehme had been denied the required minimal distraction room accommodation to retake the Psychiatry clerkship final exam and that the failure to accommodate Nehme had had an adverse impact on Nehme's ability to concentrate and his performance on the Psychiatry shelf exam, Dr. Bejar, on September 30, 2020, upheld the MSEPC decision to dismiss Nehme from HWCOM and thereby end his medical career. [*Id.*].  Importantly, Dr. Bejar's letter to Nehme denying his appeal stated, among other things, that "[b]ased upon a subsequent independent review by IDEA, there is ***no indication*** that your allegations had an adverse impact on your academic performance. Thus, your dismissal from HWCOM was the result of your academic performance. The remaining basis for your appeal are [*sic*] without merit. The determination of the

College remains undisturbed." [*Id.* (emphasis supplied]. As a result of Dr. Bejar's denial of Nehme's final appeal, Nehme was involuntarily dismissed from HWCOM on October 16, 2020.

Nehme filed the underlying lawsuit against FIU through its Board of Trustees on November 12, 2020. [D.E. 1]. On January 11, 2021, Nehme filed an Amended Complaint and Jury Trial Demand in which he asserted two claims under ADA. [D.E. 12]. In Count I of his Amended Complaint, Nehme alleged that FIU violated the ADA by failing to provide him with the required reasonable accommodation of a minimal distraction room for his retake of the Psychiatry clerkship final exam. [D.E. 12 pp. 9-12]. In Count II, Nehme alleged that FIU, through Dr. Bejar's denial of his appeal, violated the ADA by dismissing him from the HWCOM because of his disabilities. [*Id.* pp. 12-14]. For these alleged violations, Nehme sought declaratory relief, injunctive relief in the form of readmission to HWCOM, compensatory damages, attorney's fees, and costs. [*Id.* pp. 12, 14]. Nehme also demanded a jury trial of all claims so triable. [*Id.* p. 14].

The case was actively litigated, and FIU moved for summary judgment dismissal of both of Nehme's claims on March 11, 2022 [D.E. 57; D.E. 56]. The motion was fully briefed, and the District Judge referred the motion to the Magistrate Judge for report and recommendation. [D.E. 73]. The Magistrate Judge conducted a hearing on the motion on July 6, 2022, and then issued her Report and

Recommendation on August 22, 2022, recommending that FIU's Motion for Summary Judgment be denied in its entirety. [D.E. 79].

In her Report and Recommendation, the Magistrate Judge concluded that, on the threshold issue of whether Nehme was a qualified person with a disability under the ADA, "given Nehme's contention that his DRC-awarded accommodation was not provided for the Psychiatry shelf exam retake, which contention IDEA substantiated, it cannot be said as a matter of law that these factors preclude Nehme from showing that he could meet HWCOM's essential requirements 'either with or without reasonable accommodations.' [D.E. 79 p. 8 (citing *Redding v. Nova Southeastern Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016)]. The Magistrate Judge further concluded, based on the IDEA's finding that Nehme's claim of "Providing Non-Compliant Minimal Distraction Rooms" for that exam was "substantiated", FIU was not entitled to summary judgment as to Nehme's reasonable accommodation claim in Count I of the Amended Complaint." [*Id.* p. 9]. The Magistrate Judge further found that, based on the evidentiary and testimonial records that were presented, and because of "contradictions in the record", judgment as a matter of law in favor of FIU as to Count II of the Amended Complaint was precluded, including Nehme's request for compensatory damages, "which hinges on Dr. Bejar's alleged deliberate indifference to Nehme's rights

under the ADA." [*Id.* p. 10 (citing *Martin v. Halifax Healthcare Sys., Inc.*, 621 F. App'x 594, 604 (11th Cir. 2015)].

FIU timely filed objections to the Magistrate Judge's Report and Recommendation, to which Nehme responded. [D.E. 81; D.E. 85]. The District Judge held a hearing on FIU's objections on October 18, 2022, and, by Order dated November 4, 2022, rejected the Magistrate Judge's Report and Recommendation and ruled that FIU was entitled to summary judgment dismissal of both of Nehme's ADA claims. [D.E. 90]. The District Judge then entered a final judgment based on her findings in her Order and dismissed with prejudice Nehme's case. [D.E. 91]. It is from that Order granting summary judgment to FIU and the resulting final judgment of dismissal that this appeal is taken.

# SUMMARY OF THE ARGUMENT

1.     The District Judge erred in rejecting the Magistrate Judge's Report Recommendation and in entering summary judgment in FIU's favor because Nehme presented substantial record evidence that he was a qualified individual with a disability for purposes of his ADA claims.   "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 F. App'x 776, 781 (11th Cir. 2018) (citation omitted). This requires a showing that the individual "can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations." *Redding v. Nova Southeastern Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016).

Nehme presented substantial evidence below that he had and was performing well as a medical student – i.e., at a "competent" level with term and cumulative GPAs in the 80s -- up until the time he failed the Psychiatry final exam retake for which he did not receive the required accommodation of a minimal distraction room. It was this failure of the Psychiatry final exam retake and the resulting failure of the Psychiatry clerkship that alone triggered Nehme being called before the MSEPC for a third time and that resulted in his dismissal from HWCOM.

In finding as a matter of law in FIU's favor on the threshold issue of whether Nehme was a qualified individual with a disability under the ADA, the District Judge ignored evidence of Nehme's competent medical school performance through Period 3 and instead improperly relied on a HWCOM Handbook provision and speculative testimony by Dr. Vivian Obeso that Nehme *could* have been called before the MSEPC based on his low scores on some of his clerkship final exams, instead of crediting the evidence in Nehme's favor as to what actually *did* happen that resulted in the final MSEPC hearing and Nehme's dismissal from HWCOM. The Magistrate Judge's recommendation that summary judgment should be denied as to the threshold issue of whether Nehme was a qualified individual with a disability, which was based on the record evidence and reasonable inferences drawn therefrom, thus was correct and the District Judge's decision to the contrary was in error.

2.     The District Court further erred in not adopting the remainder of the Magistrate Judge's Report and Recommendation, which found that there were triable issues of material fact as to Nehme's failure to accommodate claim in Count I of the Amended Complaint, his discriminatory dismissal claim in Count II of the Amended Complaint, and his claim that FIU acted with deliberate indifference sufficient to support a claim for compensatory damages. The District Judge ruled in FIU's favor, granting it summary judgment solely on the basis that Nehme was not a qualified individual with a disability for purposes of the ADA. The District

Judge thus felt it was unnecessary to address any of the remaining issues raised by FIU in seeking summary judgment. Had the District Judge correctly decided the threshold issue of whether Nehme was a qualified individual with a disability – i.e., found that Nehme met the eligibility requirements to be and remain a medical student at HWCOM, with or without reasonable accommodation – then she should have found, like the Magistrate Judge, that FIU was not entitled to judgment as a matter of law on Nehme's ADA claims, and denied FIU's Motion for Summary Judgment.

# ARGUMENT

## POINT I

**THE DISTRICT COURT ERRED IN REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY APPELLEE SUMMARY JUDGMENT AND IN ENTERING SUMMARY JUDGMENT IN APPELLEE'S FAVOR AS THERE WAS SUFFICIENT RECORD EVIDENCE TO SUPPORT THAT APPELLANT WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER TITLE II OF THE ADA.**

This Court's standard of review of the District Court's grant of summary judgment to FIU and dismissal of the case with prejudice is *de novo,* "considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Melton v. Abston,* 841 F.3d 1207, 1219 (11th Cir. 2016).[2] In conducting this review, the Court may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jobs for the fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986); *Twiss v. Curry*, 25 F.3d 1551, 1555 (11th Cir. 1994). Essentially, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

Here, the District Judge, in conducting its own *de novo* review of the Magistrate Judge's Report and Recommendation that recommended the full denial

---

[2] This standard of review is applicable to the arguments raised in both Points I and II of this Brief.

of FIU's Motion for Summary Judgment and rejecting it, failed to adhere to this well-established summary judgment standard. Instead of considering the evidence and facts presented and the reasonable inferences drawn therefrom in Nehme's favor, the District Judge erroneously viewed the facts and drew inferences therefrom solely in FIU's favor, not Nehme's. Moreover, the District Judge made inappropriate credibility findings in FIU's favor and erroneously relied on speculative testimony from Dr. Vivian Obeso of what **may** or **could** have happened, instead of relying on the record evidence Nehme presented of what, in fact, **did** happen that resulted in the chain of events that led to Nehme's dismissal from medical school.

In granting FIU summary judgment, the District Judge focused solely on the issue of whether Nehme was a "qualified individual" with a disability under Title II of the ADA – i.e., whether Nehme met HWCOM's eligibility requirements for continued participation in the school, with or without accommodation – and she chose not to "wade into the other issues" (which Nehme addresses in detail below) that FIU raised in support of summary judgment. [D.E. 90 p. 8]. In her decision, the District Judge correctly recognized that, "i[n] the context of postsecondary education", a person is a "qualifying individual" if the person is "able to meet the academic and technical standards requisite to admission or participation in the education program or activity" either "with or without accommodations."

*Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999)); *Zainulabeddin*, 749 F. App'x at 781. She also correctly recognized that "[t]he academic and technical standards students must meet can be and often are established by the institution's internal rules and handbook." [D.E. 90 p. 9; citing *Cooney v. Barry Sch. of L.*, 720 F. App'x 571, 575 (11th Cir. 2018); *Forbes v. St. Thomas Univ., Inc.*, 456 F. App'x 809, 811 (11th Cir. 2012). However, the District Judge erred by weighing the evidence presented below solely in FIU's favor and drawing all inferences from that evidence in FIU's favor. In doing so, she failed and refused to consider Nehme's substantial evidence of the successful completion of all his classes, including the his Period 3 clerkships, and his overall "competency" as a medical student *per the Handbook's standards* at the time he retook and failed the Psychiatry clerkship final exam, which triggered his third MSEPC hearing and his eventual dismissal from HWCOM.

Specifically, Nehme presented substantial record evidence, thoroughly briefed and argued below, that he had successfully completed his medical school education up until the time he failed the Psychiatry Clerkship shelf exam, which, as several witnesses testified in deposition, was the *sole event* that "triggered" Plaintiff being called before the MSEPC the third time leading to his dismissal from HWCOM. [D.E. 64 ¶ 44; D.E. 63-1 p. 7; D.E. 63-5 p. 12; D.E. 63-6 pp. 28-

29; D.E. 63-7 pp. 48-49]. Indeed, even Dr. Obeso, whose speculative testimony the District Judge cherry-picked and credited to support her decision against Nehme, acknowledged in deposition that Nehme's failure to pass the Psychiatry shelf exam retake was the reason that "finally got [Nehme] to the MSEPC for the third time."[*Id.*, D.E. 63-7 pp. 48-49].

Nehme presented evidence that, prior to being found by FIU's MSCWC and DRC to be suffering from disabilities and being awarded the reasonable accommodations of 50% extra time and a minimal distraction room for exam taking, Nehme had successfully completed Period 1 and had been promoted to Period 2. [D.E. 64 ¶ 5]. This promotion decision would have entailed a determination by MSEPC – the sole arbiter designated to make student promotion decisions – that Nehme had made "satisfactory academic progress and maintained a degree of professionalism necessary to become a physician." [*Id.*]. Although Nehme failed only one final exam in Period 1 – Genes, Molecules, and Cells – he successfully remediated the exam and passed the course without receiving any accommodations for his as-yet undiagnosed disabilities. [*Id.* ¶ 4].

The record evidence further demonstrated that, after failing the Cardiovascular and Respiratory Systems course in Period 2 (likely as a result of his still undiagnosed and unaccommodated learning disabilities), Nehme underwent disability testing at FIU's MSCWC and, based on the MSCWC's diagnoses,

received his two testing accommodations through FIU's DRC. [*Id.* ¶¶ 3, 4].  It was around the same time as his being awarded the accommodations that Nehme was called before the MSEPC for the first time, was placed on probation (which status remained throughout Nehme's remaining time at HWCOM), and was allowed to continue with his Period 2 class. [*Id.* ¶¶ 11, 13].

While the record evidence demonstrated that Nehme, after being awarded the testing accommodations, failed another Period 2 course – Systems Based Practice – Nehme failed this course because he failed the final exam for which he was not properly accommodated his required testing accommodations and for which he was not allowed a retake (as all HWCOM students were normally allowed to do). [*Id.* ¶ 15].  Instead of retaking the final exam to pass the course, Nehme went on the approved medical leave of absence for personal medical reasons.  [*Id.* ¶¶ 14, 15].  While on this leave of absence, Nehme was called before the MSEPC for a second time due to the Systems Based Practice course failure and because a professionalism incident report had been issued to Nehme [*Id.* ¶ 16].  Although Nehme was still on the "probation" status at this time, the MSEPC allowed him, at his request, to repeat all of Period 2 upon his return from the leave of absence. [*Id.*].

It was upon his return to the medical school from the leave of absence to repeat Period 2 that Nehme further proved that he could perform at a "competent"

level by HWCOM's Handbook standards. It was undisputed below that Nehme successfully passed all his Period 2 courses, most of them with grades in the 80s and 90s, and that he tallied a term GPA of 84.27 and a cumulative GPA through Period 2 of 81.27, both grades of which evidenced his "competency" as a medical student per the Handbook. [*Id.* ¶ 17]. Indeed, even according to Dr. Obeso, Nehme overall was competent and showed "satisfactory performance" in those courses he passed. [*Id.*; D.E. 63-7 pp. 10, 19] Nehme was thereafter promoted from Period 2 to Period 3, which, also according to Dr. Obeso, entailed a determination by MSEPC that Plaintiff had achieved "satisfactory academic performance" through Period 2. [*Id.*].

Nehme provided further proof of his overall competency as a HWCOM medical student with undisputed evidence that he had passed all his Period 3 clerkships up until the time of the Psychiatry clerkship exam and its retake. [*Id.* ¶ 20]. The record evidence below demonstrates that Nehme had passed all his Period 3 clerkships, prior to Psychiatry, with grades above 80, evidencing his competency in those courses as a medical student. [*Id.*; 63-1 p. 218]. The evidence unequivocally showed that because of his overall course grades in the Period 3 clerkships he passed, Nehme had a Period 3 term GPA of 86.23, and his cumulative GPA for all periods had increased to 82.62, both grades evidencing "competency" by the Handbook's standards. [*Id.*]

Indeed, although suggested otherwise in the District Judge's decision, Nehme did extremely well, with only positive physician evaluations and no negative ones, in the "very important' clinical components for each of his clerkships, including the Psychiatry. [*Id.*]. The clinical components for each clerkship carried the same 30% course weight as did the final exams. [*Id.*].[3]

According to Dr. Obeso in her deposition, had Plaintiff passed all his clerkships with grades in the 80s, which to the point of failing Psychiatry he had indisputably done, he would have been eligible for promotion from Period 3 to Period 4. [*Id.*; D.E. 63-7 p. 17]. Dr. Obeso also testified that there were HWCOM students who were promoted from Period 3 to Period 4 with GPAs less than 80, and students who eventually graduated from the school with cumulative GPAs less

---

[3] Although the clinical component of the Period 3 clerkships was accorded the same course weight as the final exams, there is proof – or at least a reasonable inference can be drawn – that the clinical component was a more important part of the clerkships than the final exams. First, the clinical component demonstrated the student's actual hands-on, real-world diagnoses and patient treatment abilities as a potential physician. [D.E. 64 ¶ 20]. Second, the HWCOM Handbook itself suggests as much. Specifically, and as even recited in both the Magistrate Judge's and District Judge's differing decisions, while low percentile final exam scores on three or more final exams "***may***" result in referral to the MSEPC, "poor clinical performance that does not meet expectations, based on academics and/or professionalism, ***can*** result in a recommendation by the MSEPC for repeating the year ***or for dismissal***". [*Id.* (emphasis supplied)]. The Handbook thus expressly provides for more severe consequences, including "dismissal" from HWCOM, for "poor clinical performance" in the clerkships than in a student getting low percentile, albeit passing, exam scores, which "may" result in referral to the MSEPC and does not mention "dismissal" as a potential consequence.

than 80. [*Id.;* D.E. 63-7 pp. 17-21]. Based on these statements by Dr. Obeso, it is logical to infer that, had Nehme not failed the Psychiatry clerkship, he would have been on his way to passing Period 3 and moving on to Period 4, the final year of medical school. The cumulative effect of this record evidence thus undermines any claim that Nehme was not academically qualified to continue as a medical student at HWCOM "with or without accommodation", absent his failure of the Psychiatry final exam, retake, and course.

The Magistrate Judge clearly was aware of this evidence and the material facts arising therefrom when she concluded in her Report that, "given Nehme's contention that his DRC-awarded accommodation was not provided for the Psychiatry shelf exam retake, which contention IDEA substantiated, it cannot be said as a matter of law that these factors preclude Nehme from showing that he could meet HWCOM's essential requirements 'either with or without reasonable accommodations.'" [D.E. 79 p. 8]. Notwithstanding this correct conclusion, the District Judge rejected the Magistrate Judge's recommendation. In doing so, the District Judge ignored all of Nehme's evidence of his academic and clinical accomplishments and his overall record of "competency" as an HWCOM medical student, and focused instead solely on that part of the Handbook that provided that a student "may" be referred to the MSEPC in the event of three low percentile scores in the clerkship shelf exams, and on the testimony of Dr. Obeso, mainly

from her proffered affidavit, that Nehme "could" have been brought before the MSEPC on that basis. [D.E. 90 pp. 10-12].   Indeed, Dr. Obeso's deposition testimony in this regard differs in significant ways from statements she later made in her affidavit, thus raising significant credibility issues as to Dr. Obeso's testimony, which the District Judge nonetheless credited without reservation. Specifically, when questioned in her deposition about Nehme's clerkship grades all being in the 80s, Dr. Obeso stated that Nehme "***could*** have gotten called to the MSEPC due to struggling on those shelf exams." [D.E. 63-7 p. 17 (emphasis supplied)].   Obeso also testified in her deposition that, although Nehme would have been eligible for promotion from Period 3 to Period 4 had he scored in the 80s on all his clerkships, there "***may*** have been concern because of his continued very concerning performance on those shelf examinations …." [*Id.* (emphasis supplied].   Thus, Dr. Obeso's deposition testimony was speculative at best that Nehme "could have been" called before the MSEPC and that there "may have been concern" over his shelf exam performance.   The speculative nature of this testimony is underscored by Dr. Obeso's other deposition testimony that it was Nehme's failure of the Psychiatry clerkship (and thus not his performance on the other shelf exams) that triggered his being called before the MSEPC the third time. [D.E. 64 ¶ 44; D.E. 63-7 pp. 48-49, 51-52].

In contrast to her deposition testimony, Dr. Obeso in her affidavit later

proffered in support of FIU's Motion for Summary Judgment, made statements about Nehme being called before the MSEPC the third time that were significantly different, less speculative, and more emphatic. According to Dr. Obeso's in her affidavit, "even if, [Nehme] passed his Psychiatry shelf exam retake, ***he would likely have been called before the MSEPC*** . . . to determine eligibility for promotion into Period 4 because he was on academic probation and would have still failed four initial shelf exams and scored extremely low on two final shelf exams". [D.E. 55-6 p. 12 (emphasis supplied)]. This change in testimony, from purely speculative (i.e., "may" to "could have") to more certainty ("would likely have been") raises a credibility issue regarding Dr. Obeso on the issue, and it was error for the District Judge to only give credit to Dr. Obeso's affidavit statements, and ignore the substantial evidence as to Nehme's academic accomplishments and overall "competency" (by Handbook standards, no less) as a medical student, in granting FIU's Motion for Summary Judgment.

Put simply, it was error for the District Judge, in granting summary judgment to FIU and rejecting the Magistrate Judge's Report and Recommendation to focus her analysis on what might have happened instead of what did happen, as supported by the record evidence presented below. While the Handbook provided that Nehme "may" have been referred to the MSEPC based on three low percentile shelf exam scores, and that, according to Dr. Obeso in her deposition, Nehme

"could have gotten called to the MSEPC" because there "may be" concern over his shelf exam scores, the fact is, based on the evidence presented below, that Nehme was *not* called before the MSEPC for these reasons. Instead, the undisputed evidence below demonstrated that Nehme was called before the MSEPC for a third time *solely* because of his failure of the Psychiatry clerkship, which occurred because he had failed the final exam retake for which he was not properly accommodated. It is this evidence that the Magistrate Judge correctly relied on, and which the District Judge improperly and incorrectly ignored, that supports denial of FIU's Motion for Summary Judgment on the threshold issue of whether Nehme was a "qualified individual" with a disability. The District Judge thus committed reversible error in ruling otherwise, and her decision should be reversed.

## POINT II

**THE RECORD EVIDENCE WAS SUFFICIENT TO DEMONSTRATE THAT TRIABLE ISSUES OF MATERIAL FACT REMAINED AS TO APPELLANT'S FAILURE TO ACCOMMODATE AND WRONGFUL DISMISSAL CLAIMS UNDER TITLE II OF THE ADA, AND THAT THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY APPELLEE SUMMARY JUDGMENT ON THESE ISSUES SHOULD HAVE BEEN ADOPTED AND SUMMARY JUDGMENT DENIED.**

> **A.** *There were genuine issues of material fact that FIU failed to provide Plaintiff with the required testing accommodations for his Psychiatry shelf exam retake.*

The District Judge granted summary judgment to FIU solely on the threshold issue of whether Nehme was a qualified individual with a disability at the time of both FIU's alleged failure to accommodate him for the Psychiatry final exam retake and his involuntary dismissal. The District Judge thus never addressed the remaining issues: (1) whether FIU violated the ADA by not providing Nehme with the reasonable accommodation of a minimal distraction room for the Psychiatry clerkship final exam retake; (2) whether Dr. Bejar, in denying Nehme's final appeal and upholding the MSEPC's dismissal decision, discriminatorily dismissed Nehme because of disability; and (3) whether there was sufficient evidence to show that HWCOM acted with deliberate indifference to support Nehme's claim for the recovery of compensatory damages. The Magistrate Judge in her Report and Recommendation addressed each of these issues and found that, based on the evidence presented, there were sufficient issues of material fact such that FIU's motion for summary judgment should be denied. As shown below, the Magistrate Judge got it right.

First, as the Magistrate Judge correctly recognized, substantial record evidence was presented below to demonstrate that triable issues of material fact exist as to Nehme's failure to accommodate claim in Count I of his Amended Complaint. "An ADA discrimination claim can be based on either a conventional 'disparate treatment' theory, or a theory that the defendant failed to make

'reasonable accommodations,' or both." *Forbes v. St. Thomas Univ., Inc.*, 768 F.Supp.2d 1222, 1227 (S.D. Fla. 2010). Failure to provide reasonable accommodation for a disability thus "is a distinct, actionable theory of discrimination under the ADA." *Redding*, 165 F. Supp. 3d at 1294 (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1209, 1212 n. 6 (11th Cir. 2008), and *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007)).

To prove a failure to accommodate claim, Nehme was required to show that he: (1) is disabled; (2) is a "qualified individual"; and (3) was subjected to unlawful discrimination because of the disability by not being a provided a reasonable accommodation. *McKane v. UBS Financial Services, Inc.*, 363 Fed. App'x 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)); *Holly*, 492 F.3d at 1256). Here, it is undisputed, and was undisputed below, that Nehme suffered from medically diagnosed learning disabilities, which required that he be provided with exam taking accommodations, including placement in a minimal distraction room. [D.E. 64 ¶ 8]. In addition, as demonstrated in Point I above, ample record evidence was presented below that Nehme was an otherwise "qualified individual" with a disability who, had he passed the Psychiatry shelf exam retake and the Psychiatry clerkship, had the grades such that he would have been eligible for promotion from Period 3 to Period 4. [D.E. 64 ¶¶ 20, 44]. The only remaining issue for Nehme's failure to

accommodate claim thus is whether HWCOM failed to provide Nehme with the required reasonable accommodation of a minimal distraction room for his retake of the Psychiatry shelf exam, which resulted in his failure of the exam and the Psychiatry clerkship, his then being called before the MSEPC, and his ultimate dismissal from HWCOM.

Nehme presented ample record evidence below to show that FIU failed to provide him with the required accommodation of a minimal distraction room for his Psychiatry shelf exam retake, and that, as a result, he failed the exam and the clerkship, was called before the MSEPC, and was dismissed. Nehme presented his own deposition testimony and that of the exam proctor, Lachica, that he was placed in a room (Room AHC2 495) that was not appropriate as a minimal distraction room as there were constant visual, auditory, and environmental distractions taking place both inside and outside the room. These distractions included a "freezing" cold room temperature (to the point a space heater had to be brought in), constant foot traffic outside the room, constant talking and yelling of people passing outside the room, constant shapes of people passing by the room as viewed through the frosted glass window that faced the hallway, and constant announcements made from a loudspeaker outside the room announcing when students could return to their OSCE simulation rooms. [D.E. 64 ¶¶ 42, 43]. Indeed, Lachica, the proctor, testified in her deposition that Room AHC2 495 was not the preferred room for

accommodations because of its location near a large conference room, stairs, and an elevator and because of the room's "freezing cold" temperature, and she agreed that no student should have been assigned to the room as a minimal distraction room on the date in question given the other events scheduled to take place outside the room. [D.E. 64 ¶ 43].

Nehme also presented below the original and final IDEA investigative reports, which contained narrative of witness interviews as part of FIU's internal investigation into Nehme's claims that he was discriminated against because he was not properly accommodated. [D.E. 63-1 pp. 32, 65-66]. Both reports contained the memorialization of statements made by Teresa Reyes-Gavilan ("Reyes-Gavilan"), the employee who assigned Nehme to room AHC2 495 for the exam retake and who was fully aware of the many student events and their potential distractions occurring directly outside the room during the exam. [*Id.*; D.E. 64 ¶¶ 22, 23]. Reyes-Gavilan informed IDEA investigator Valerie Hall that, at the time Nehme was scheduled for the Psychiatry exam retake in room AHC2 495, there were several meetings in other conference rooms and three nearby OSCE simulation rooms with each meeting having 20 participants. [D.E. 64 ¶ 23]. Reyes-Gavilan also informed Hall – who confirmed in deposition that all statements Reyes-Gavilan made to her were accurate – "that no student should have been assigned to take a test in AHC2 495 because of the amount of people on that

floor." [*Id.*]. Reyes-Gavilan further informed Hall that "she normally catches these situations and understands that a student may have felt uncomfortable with the arrangement." [*Id.*].

Ultimately the most damning record evidence presented below – and on which the Magistrate Judge correctly relied in recommending denial of summary judgment – were the IDEA's report findings and conclusions that HWCOM had failed to provide Nehme with the required reasonable accommodation of a minimal distraction room for the Psychiatry shelf exam retake and that this failure "impacted his ability to concentrate while taking the … exam." [D.E. 64 ¶¶ 45, 46, 50]. The IDEA's findings and conclusions thus were admissions made by FIU of HWCOM's failure to properly accommodate Nehme for his disability for his retake of the Psychiatry clerkship final exam. *See Williams v. Asplundh Tree Expert Co.,* No. 3:05–cv–479–J–33MCR, 2006 WL 2868923 at *5 (M.D. Fla. Oct. 6, 2006) (granting plaintiff's motion for summary judgment and recognizing that company's internal investigative report findings of discrimination can be introduced into evidence by plaintiff as admissions of party-opponent under Fed. R. Evid. 801); *Georgia Power Co. v. ABB, Inc.*, NO. 4:17-CV-00125-HLM, 2019 WL 11505721 at *5, n.1 (N.D. Ga. Feb. 27, 2019) (relying on *Williams* to recognize that company's internal incident report finding failure to follow safety procedures was an admission of party opponent under Fed. R. Evid. 801); *Ray v.*

*Ford Motor Co.*, No. 3:07CV175-WHA-TFM, 2011 WL 6749034, at *3 (M.D. Ala. Dec. 23, 2011) (finding an internal report to be an admission because "[it] was created by [the company]'s agents and contains evidence contrary to [the company]'s position at trial").

All this record evidence – particularly the IDEA report findings – demonstrate that, at the very least, triable issues of material fact exist such that Nehme's failure to accommodate claim in Count I of his Amended Complaint should survive summary judgment. The Magistrate Judge correctly ruled as such in her Report and Recommendation, and the District Judge should have adopted that finding by denying FIU's motion for summary judgment in Nehme's failure to accommodate claim.

The Magistrate Judge also correctly rejected FIU's summary judgment argument that Nehme somehow violated the "interactive process" by not raising his discrimination complaint until the final leg of his appeal. The Magistrate Judge correctly recognized that FIU "had the 'affirmative duty to reasonably accommodate the known physical or mental limitations of [Nehme as] an otherwise qualified person.'" [D.E. 79, p. 9 (citing *Forbes v. St. Thomas Univ., Inc.,* 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010)). In this regard, the Eleventh Circuit has identified the "interactive process" under the ADA as the "informal, interactive process" that a providing entity should initiate, and that should then be

engaged in between the disabled person and the entity, to determine what appropriate accommodation can and should be given once the disabled person has requested to be accommodated. *Frazier-White v. Gee*, 818 F.3d 1249, 1257 (11th Cir. 2016) ("The regulations state that an employer may in some circumstances need to 'initiate an informal, interactive process' with a disabled employee to determine the appropriate reasonable accommodation. 29 C.F.R. §1630.2(o) (3)."). It does not, as FIU has argued in its Motion and its objections to the Magistrate Judge's Report and Recommendation, refer to an affirmative obligation on the part of the disabled person who already has been awarded an accommodation, such as Nehme here, to alert the providing entity that the accommodation should be provided when it is not. Indeed, no Eleventh Circuit case law supports such a one-sided obligation on the part of the disabled person, because once a reasonable accommodation is awarded, the providing entity has the affirmative duty to provide it. *Forbes*, 768 F.Supp.2d at 1227 (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275–276 (2nd Cir. 2003).

In sum, the Magistrate Judge's recommendation that summary judgment be denied as to Count I of the Amended Complaint was correct, and the District Judge erred in not adopting that recommendation.

### B. *There were genuine issues of material fact that support Plaintiff's claim that his appeal was denied and he was dismissed from HWCOM because of his disability.*

The Magistrate Judge in her Report and Recommendation correctly recognized that there were triable issues of material fact as to Nehme's wrongful discharge claim in Count II of the Amended Complaint, mainly due to the conflicting testimony between Dr. Behar and that of the IDEA's Director, McWhorter, and its lead investigator, Hall.

Nehme's discriminatory dismissal claim is focused on Dr. Bejar's final decision denying Nehme's appeal of the MSEPC's dismissal recommendation. The record evidence and undisputed material facts derived therefrom showed that Dr. Bejar made this decision even though she was aware at the time: (1) of Nehme's disability; (2) that Nehme had not been properly accommodated for his Psychiatry shelf exam retake as determined by the IDEA; (3) that it was the retake exam failure that caused Nehme to fail the Psychiatry clerkship; (4) that Nehme's failure of the Psychiatry clerkship triggered the MSEPC hearing and resulted in the dismissal recommendation; and (5) that the IDEA in its two reports specifically found that the failure to accommodate Nehme for the retake exam had an adverse impact upon his performance on the exam. [D.E. ¶¶ 39, 44-46, 50]. Despite her awareness of these relevant facts and their supporting evidence in the IDEA reports, which Dr. Bejar purportedly thoroughly reviewed before she made her final decision, Dr. Bejar issued her letter to Nehme denying his appeal and finding falsely that "there is no indication" that Nehme's allegations investigated by the

IDEA "had an adverse impact upon" his "academic performance". [D.E. ¶ 50]. As both McWhorter and Hall testified in deposition, Dr. Bejar's conclusion and statement reached in her appeal denial decision was inaccurate. [D.E. ¶ 50].

Significantly, Dr. Bejar testified in deposition that, even though she had thoroughly reviewed both IDEA reports prior to making her final decision upholding Nehme's dismissal from HWCOM, there was nothing in the IDEA reports that indicated HWCOM's failure to provide Nehme with the required minimal distraction room adversely affected his performance on the Psychiatry shelf exam retake. [D.E. 64 ¶ 50]. This testimony, however, was contradicted not only by the IDEA's explicit findings to the contrary in its reports, but also by McWhorter's and Hall's consistent testimonies that Dr. Bejar's conclusion was inaccurate. [*Id.*]. Such testimonial contradictions, especially as they directly relate to Dr. Bejar's credibility in making the final dismissal decision, when viewed in a light most favorable to Nehme, established triable issues of material fact as to Dr. Bejar's motives and intent in denying the appeal, and the Magistrate Judge's recommendation to deny FIU summary judgment on Count II thus was correct. That the District Judge did not adopt this finding was thus in error.

**C.** *There were genuine issues of material fact that FIU acted with deliberate indifference in both failing to accommodate Nehme for his Psychiatry exam retake and in ultimately dismissing him.*

The Magistrate Judge's recommendation to deny HWCOM summary judgment as to Nehme's claim for compensatory damages was also correct and should have been adopted by the District Judge.

To recover compensatory damages in his ADA claims against FIU, Nehme is required to prove that FIU intentionally discriminated against him. *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012). A plaintiff can establish intentional discrimination with evidence that the defendant was "'deliberately indifferent' to [his] rights under the ADA" because the defendant knew that a rights violation was "substantially likely," but "fail[ed] to act on that likelihood." *Martin v. Halifax Healthcare Sys.*, 621 Fed. App'x 594, 603-04 (11th Cir. 2015) (citation omitted); *see also Liese*, 701 F.3d at 348. "[D]eliberate indifference involves a 'deliberate choice'" and "[m]ere negligence is insufficient." *Martin,* 621 Fed. App'x At 603-04 (quoting *Liese* 701 F.3d at 344, and *Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005)).

In addition, to hold an organization liable, the defendant's deliberate indifference must have been through "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf [and who] has actual knowledge of discrimination in the

[defendant's] programs and fails to adequately respond." *Liese*, 701 F.3d at 349 (citation omitted) (emphasis in original). In this regard, the "analysis of what constitutes discriminatory intent ... is inseparably linked to the question of whose discriminatory intent may be attributed to [an entity] for purposes of establishing liability." *Id.* at 349 (emphasis in original); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009) (deliberate indifference requires that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures ... has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond."). Here, for both of Nehme's claims, there was ample record evidence presented below that responsible "officials" with HWCOM who had actual knowledge of his discriminatory conditions and treatment and who had the responsibility and authority to institute corrective measures to address those conditions chose instead to deliberately ignore their responsibilities and not take any corrective action.

First, as to Nehme's failure to accommodate claim, there was record evidence presented that the HWCOM officials in charge of assigning Nehme to a minimal distraction room for his retake of the Psychiatry clerkship final exam assigned him to a room that should not have been used as a minimal distraction room. [D.E. 64 ¶¶ 23, 28, 42, 43]. This included Reyes-Gavilan, who, as discussed more fully above, was responsible for room assignments, had knowledge of all

events that were scheduled to take place in the vicinity of room AHC2 495, which included events that entailed heavy foot traffic in the area, and who informed IDEA in its internal investigation that "no student should have been assigned to take a test in AHC2 495 because of the amount of people on that floor." [D.E. 64 ¶ 23].  Hall, the IDEA investigator who interviewed Reyes-Gavilan, testified that Reyes-Gavilan as the room scheduler should have had knowledge of what the conditions were around AHC2 495 on the day in question, and that Reyes-Gavilan should have taken action to change the room for Nehme. [*Id.*].

In addition, as discussed more fully above, Lachica, the exam proctor, admitted in deposition that she had the authority to stop the exam and request a room change if she experienced significant room distractions. [D.E. 64 ¶¶ 29, 43. Lachica also admitted that she had the authority and responsibility in the event of noisy conditions occurring outside the exam room to physically get up and ask those making the noise to quiet down. [*Id.*].  However, Lachica deliberately and knowingly chose to shirk these responsibilities and to do nothing, claiming that she was "afraid" of further distracting Nehme. [*Id.*].  Thus, both Reyes-Gavilan and Lachica, as HWCOM officials, were in positions of authority to correct the failure to accommodate situation, were deliberately indifferent to Nehme's disability and his need to be accommodated by taking no corrective action whatsoever when they could and should have.

However, to the extent neither Reyes-Gavilan nor Lachica legally qualify as HWCOM "officials" for purposes the "deliberate indifference" standard, substantial record evidence was also presented that HWCOM was "willfully blind" in its attention to and implementation of reasonable accommodations for its disabled students as required by the ADA. IDEA in its thorough investigation and its initial report findings acknowledged numerous long-running, systemic problems with HWCOM's provision of testing accommodations to its students and its administrators' complicity therein. [D.E. 64 ¶¶ 48, 51]. In addition, substantial record evidence was presented that HWCOM failed to properly train those employees who were assigned to implement the testing accommodations process, including most notably Dean Adrian Jones, the exam proctor Lachica, and Reyes-Gavilan's supervisor, Maritere Williams, in the ADA and the requirements of a minimal distraction room. [D.E. 64 ¶ 51]. As the Eleventh Circuit and district courts within it have recognized, such blind delegation of "complete discretion to the staff" who are not properly given guidance in the ADA and accommodations requirements is "willful blindness" comparable to deliberate indifference for purposes of ADA compensatory damage claims. *Liese*, 701 F.3d at 351; *Segev v. Lynn Univ., Inc.*, No. 19-CV-81252-Cannon/Reinhart, 2021 WL 2269838 at *13 (S.D. Fla. Feb. 6, 2021) (denying summary judgment as to intentional discrimination claim based on "willful blindness").

As to Plaintiff's discriminatory dismissal claim in Count II, and as more fully discussed above, ample evidence was presented below – most notably in the directly conflicting testimonies of Dr. Bejar on the one hand and McWhorter and Hall on the other -- that Bejar, in denying Nehme's appeal in the face of IDEA's detailed, written findings that Nehme was not reasonably accommodated and that such discrimination adversely impacted his academic performance, chose to willfully ignore the IDEA's findings and deny Nehme's appeal. [D.E. 64 ¶¶ 39, 50]. There was also evidence presented that Dr. Bejar testified falsely in her deposition when she repeatedly claimed that IDEA had not specifically found in its reports that Nehme's failure to be accommodated for his exam retake adversely impacted his performance on the exam, when the report and testimonies of McWhorter and Hall unequivocally stated otherwise. [D.E. 64 ¶ 50]. There was also uncontroverted evidence presented below that Dr. Bejar's written conclusion in her denial of Nehme's appeal, to the effect that there was "no indication" that his upheld discrimination allegations had "an adverse impact" upon his academic performance, was false and inaccurate. [D.E. 64 ¶ 50].

Accordingly, there existed genuine, triable issues of material fact as to whether HWCOM and its officials acted with deliberate indifference in both denying Nehme his testing accommodation for the Psychiatry exam retake and in upholding his dismissal. The Magistrate Judge correctly found, at least as to Dr.

Bejar's actions, that her denial of Nehme's appeal and her upholding his dismissal could have been done with deliberate indifference to Nehme's rights under the ADA.  The Magistrate Judge also correctly recommended that summary dismissal of Nehme's claim for compensatory damages should be denied.  The District Judge should have adopted this recommendation and she erred in not doing so.

## CONCLUSION

For the foregoing reasons, the District Court's decision granting Appellee's motion for summary judgment and entering final judgment of dismissal of the case with prejudice should be reversed, and the case should be remanded to the District Court for further proceedings, including trial.

Respectfully submitted,

> RODERICK V. HANNAH, ESQ., P.A.
> Attorneys for Plaintiff-Appellant
> 4800 North Hiatus Road
> Telephone:  (954) 362-3800
> Facsimile:   (954) 362-3779
> Email:  rhannah@rhannahlaw.com
>
> By    /s/ *Roderick V. Hannah*
>       Roderick V. Hannah
>       Fla. Bar No. 435384

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because:

   1.

   [**X**] this brief contains **10,690** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

   [_] this brief uses a monospaced typeface and contains [_____] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [**X**] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 for Windows with Times New Roman 14-point typeface, or

   [_] this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

(s) */s/ Roderick V. Hannah*
  RODERICK V. HANNAH

Attorney for Appellant ELIE NEHME

Dated:  February 9, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _____*s/ Roderick V. Hannah*_____
Roderick V. Hannah
Florida Bar No. 435384

**SERVICE LIST**
*Nehme v. Florida International University Board of Trustees*
**CASE NO. 22-13945-B**

Lourdes E. Wydler, Esq.
Lauren D. Martin, Esq.
WYDLER LAW
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
lew@wydlerlaw.com
ldm@wydlerlaw.com

*Attorneys for Appellee*
*FLORIDA INTERNATIONAL UNIVERSITY*
*BOARD OF TRUSTEES*