IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.: 22-13945-B
_____

ELIE NEHME,
Plaintiff-Appellant,

v.

FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES,
Defendant-Appellee.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 20-cv-24649-CANNON/Otazo-Reyes
_____

**APPELLEE'S ANSWER BRIEF**
_____

LOURDES E. WYDLER, ESQUIRE
Florida Bar No. 719811
LAUREN D. MARTIN, ESQUIRE
Florida Bar No. 1034166

WYDLER LAW
2600 Douglas Road
Douglas Centre, PH-4
Coral Gables, FL 31334
Telephone: (305) 446-5528

**ATTORNEYS FOR APPELLEE**
**FLORIDA INTERNATIONAL UNIVERSITY**
**BOARD OF TRUSTEES**

## <u>APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

### <u>NEHME V. FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES</u>

CASE NO.: 22-13945-b

Appellee, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU"), by and through undersigned counsel, pursuant to the Federal Rule of Appellate Procedure 26.1 and the Eleventh Circuit Rule 26.1-1, states the following is an alphabetical list of the trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations that have an interest in the outcome of the appeal:

Espino Wydler, Lourdes – Counsel for Appellee

Florida Department of Financial Services, Division of Risk Management – Interested Party

Florida International University Board of Trustees – Appellee/Defendant

Hannah, Roderick V. – Counsel for Appellant

Judge Aileen M. Cannon – United States District Judge

Judge Alicia M. Otazo Reyes – United States Magistrate Judge

Nehme, Elie – Appellant/Plaintiff

Roderick V. Hannah, Esq., P.A. – Counsel for Appellant

Wydler Law – Counsel for Appellee

# INTRODUCTION

In its Answer Brief, the Appellee/Defendant Florida International University Board of Trustees will be referred to as "FIU", "University", or "Appellee". The Appellant, Elie Nehme, will be referred to as "Appellant" or "Nehme". References to the Record will be made in accordance with Eleventh Cir. R. 28-5 and Fed. R. App. P. 28(e). References to the record shall be to Southern District docket entry number and page number: (R. #, p. #). A document not assigned a docket entry number will be referred to by its title. The Appellant's Initial Brief shall be cited as: (I.B., p. #).

# STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully submits that oral argument is not necessary because it would not significantly aid the decisional process. The dispositive issues raised in this appeal have been authoritatively determined and are adequately presented in the briefs and record. 11th Cir. R. 28-1(c); 11th Cir. R. 34-3(b) and (d).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS …………………………………...C-1

INTRODUCTION……………………………………………………………..i

STATEMENT REGARDING ORAL ARGUMENT………………………….i

TABLE OF CONTENTS……………………………….…………….......……....ii

TABLE OF CITATIONS……………………………………………………….iv

STATEMENT OF JURISDICTION……………………………………......1

STATEMENT OF THE ISSUES………………………………………………...2

STATEMENT OF THE CASE……………………...……………………………...3

    A. Course of Proceedings and Disposition in the District Court……………..3

    B. Statement of the Facts…………………………………………............4

    C. Standard of Review………………………………………………...17

SUMMARY OF THE ARGUMENT……………………………...…………18

ARGUMENT……………………………………………………………...19

    I.     Summary Judgment in Favor of Appellee Should Be Affirmed Because Appellant Cannot Establish an Essential Element of His *Prima Facie* Case - That He Was a "Qualified Individual" …………………………………..19

        A. Appellant's Long-Standing Status on Academic Probation and Continued Poor Performance as Set Forth in the Handbook, Even Excluding the Contested Psychiatry Shelf Exam Retake, Establishes a Failure to Meet FIU's Technical Standards for the Medical Program………………………………………………………..20

B. Appellant's Suggested Inference Regarding "Overall Competency" is Unreasonable and Not Supported By Law…………………………26

II. Despite Appellant's Inability to Satisfy the Qualified Individual Element, a Threshold Issue for Both Claims, Summary Judgment in Favor of FIU Should Nonetheless Be Affirmed …………………………………...30

A. FIU Provided Appellant with Reasonable Accommodations ............31

B. The Record Does Not Establish Deliberate Indifference Under Either Claim As No Discriminatory Animus Can Be Gleaned From the Evidence………………………………………………………........39

    i.   Alleged Failure to Accommodate…………………..40
    ii.  Purported Wrongful Dismissal……………………..44

CONCLUSION……………………………………………………...………..…...49

CERTIFICATE OF COMPLIANCE…………………………………………...……50

CERTIFICATE OF SERVICE………………………………………………………51

# TABLE OF CITATIONS

**Cases**                                                                                          **Pages**

*Alvarez v. Sch. Bd. of Broward Cnty.*,

    208 F. Supp. 3d 1281 (S.D. Fla. 2016)…………………………………...36

*Aponte v. Akima Glob. Servs., LLC*, No. 17-24184-CIV, 2022 WL 2289646,

    (S.D. Fla. May 31, 2022), appeal dismissed, No. 22-12052-GG, 2022 WL

    4359201 (11th Cir. July 14, 2022)…………………………………………..30

*Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78 (1978)…………...27

*Bowens-Thomas v. Alabama Coop. Extension Sys.*,

    No. 2:16-CV-621-WKW, 2022 WL 617184 (M.D. Ala. Mar. 2, 2022)…......36

*Boyle v. City of Pell City*, 866 F.3d 1280 (11th Cir. 2017)…………………………31

*Cesaire v. Tony*, 2020 WL 5750011 (S.D. Fla. Sept. 24, 2020)……………………43

*Cooney v. Barry School of Law*, 720 Fed.Appx. 571 (11th Cir. 2018)………...20, 23

*D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014

    (11th Cir. 2020), cert. denied, 141 S. Ct. 1435 (2021)………………………31

*Datto v. Fla. Int'l Univ. Bd. of Trustees*,

    No. 1:20-CV-20360, 2020 WL 3963713 (S.D. Fla. July 13, 2020)…………20

*Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248 (11th Cir. 2010)…………..39

*Doe 1 v. City of Chicago*,

    18 C 3054, 2020 WL 1166222 (N.D. Ill. Mar. 11, 2020)……………………43

*Ellis v. Morehouse Sch. of Med,* 925 F. Supp. 1529 (N.D. Ga. 1996)………………24

*\*Forbes v. St. Thomas Univ., Inc.*,

768 F. Supp. 2d 1222 (S.D. Fla. 2010)……………………………........*passim*

*Forbes v. St. Thomas University, Inc.,*

456 Fed. Appx. 809 (11th Cir. 2012)…………………………………..*passim*

*Frank v. University of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007)……………37

*Friedson v. Shoar*, 2020 WL 4785072 (M.D. Fla. Aug. 18, 2020),

aff'd, 2021 WL 5175656 (11th Cir. Nov. 8, 2021)…………………………..43

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)………………………39

*Georgia Power Co. v. ABB Inc.*, 2019 WL 11505721

(N.D. Ga. Feb. 27, 2019), *aff'd,* 811 Fed. Appx. 517 (11th Cir. 2020)………42

*\*Goldberg v. Fla. Int'l Univ.*,

838 F. App'x 487 (11th Cir. 2020)…………………………………..*passim*

*Herrera v. Community College of Allegheny County*,

2017 WL 2813616 (W.D. Penn. June 29, 2017)……………………………25

*Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299 (11th Cir. 1989)………………..42

*Hoppe v. College of Notre Dame of Maryland*,

835 F. Supp. 2d 26 (D. Md. 2011)…………………………………………37

*J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921 (11th Cir. 2016)……………19, 24

*Jackson v. City of Chi.*, 414 F.3d 806 (7th Cir. 2005)…………………………...35

*Khan v. Midwestern Univ.*, 879 F.3d 838 (7th Cir. 2018),

as amended on denial of reh'g (Feb. 26, 2018)………………………………24

*Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012)……………..39

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001)……………………30

*Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874

(S.D. Tex. 2012), aff'd, 524 Fed. Appx. 93 (5th Cir. 2013)………………..25

*Martin v. Halifax Healthcare Sys.*, *Inc.,* 621 Fed. Appx. 594 (11th Cir. 2015)…….44

*Martin v. Southern Illinois University School of Medicine*,

    2017 WL 4780613 (C.D. Ill 2017)……………………………………………….37

*McCullum v. Orlando Reg'l Healthcare Sys., Inc.*,

    768 F.3d 1135 (11th Cir. 2014)………………………………………...39, 44, 49

*McKane v. UBS Financial Services, Inc.*,

    363 Fed. App'x 679 (11th Cir. 2010)……………………………………….30

*Meisenhelder v. Florida Coastal Sch. of Law, Inc.*, 2010 WL 2028089

    (M.D. Fla. Feb. 19, 2010), aff'd, 395 Fed. Appx. 669 (11th Cir. 2010)……...31

*Millington v. Temple Univ. Sch. of Dentistry*,

    261 Fed. Appx. 363 (3d Cir. 2008)…………………………………………….25

*Minaei v. Univ. of Washington Sch. of Med.*,

    2018 WL 1508976 (W.D. Wash. Mar. 27, 2018)…………………………...25

*Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999)………………………………19

*Oser v. Capital University Law School*,

    2009 WL 2913919 (S.D. Ohio 2009) …………………………………….....37

*Palmer v. McDonald*, 824 Fed. Appx. 967 (11th Cir. 2020)………………………35

*Patel v. City of Madison, Alabama*, 2018 WL 1881326

    (N.D. Ala. Apr. 19, 2018), aff'd, 959 F.3d 1330 (11th Cir. 2020)…………...38

*Redding v. Nova Southeastern University*, *Inc.,*

    165 F.Supp.3d 1274 (S.D. Fla. 2016)………………………………………….19

*Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214 (1985)…………………20, 27

*Sellers v. Wake Forest University Baptist Medical Center*,

2022 WL 198736 (M.D.N.C. Jan. 21, 2022)…………………………………..38

*Se. Cmty. Coll. v. Davis*, 442 U.S. 297 (1979)…………………………………..31

*Shaikh v. Lincoln Memorial University*,

608 Fed. Appx. 349 (6th Cir. 2015)…………………………………..38, 42

*Silberman v. Miami Dade Transit*, 927 F.3d 1123 (11th Cir. 2019)………………..43

*Sirpal v. Univ. of Miami*,

2011 WL 3101791 (S.D. Fla. July 25, 2011)…………………………………..46

*Siudock v. Volusia Cnty. Sch. Bd.*, 568 F. App'x 659 (11th Cir. 2014)…………….31

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*,

117 F.3d 1278 (11th Cir. 1997)…………………………………………..36

*U.S. E.E.O.C. v. UPS Supply Chain Solutions*,

620 F. 3d 1103 (9th Cir. 2010)…………………………………………...35

*Young v. City of Palm Bay, Fla.*, 358 F.3d 859 (11th Cir. 2004)…………………...17

*\*Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*,

749 Fed. Appx. 776 (11th Cir. 2018)…………………………………..*passim*

*Zimmeck v. Marshall Univ. Bd. of Governors*,

632 Fed. Appx. 117 (4th Cir. 2015)…………………………………..25

*Zukle v. Regents of Univ. of California*,

166 F.3d 1041 (9th Cir. 1999)…………………………………………24

## Statutes                                                        Pages

28 U.S.C. § 1291…………………………………………………...1

28 U.S.C. § 1331…………………………………………………...1

34 C.F.R. § 104.3…………………………………………………19

42 U.S.C. § 12132…………………………………………...1, 3, 19

## Rules                                                           Pages

11th Cir. R. 26.1-1………………………………………………..C-1

11th Cir. R. 28-1………………………………………………..i

11th Cir. R. 28-5………………………………………………..i

11th Cir. R. 34-3………………………………………………..i

Fed. R. App. P. 26.1………………………………………...C-1

Fed. R. App. P. 28………………………………………....i

Fed. R. App. P. 32…………………………………………51

Fed. R. Civ. P. 56………………………………………..17

# STATEMENT OF JURISDICTION

This action was brought pursuant to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA"). The District Court had original jurisdiction over Nehme's claims under 28 U.S.C. § 1331.

Appellant now seeks review of the District Court's (1) Order Rejecting the Report and Recommendation (R. 79) and Granting Summary Judgment in Favor of Defendant (R. 90), which was entered on November 4, 2022, and (2) the corresponding Final Judgment (R. 91), which was entered on November 7, 2022. These two documents are final decisions of the District Court, which disposed of all Nehme's claims. Thus, the Court has jurisdiction pursuant to 28 U.S.C. § 1291. The Appellant, Elie Nehme, filed a timely Notice of Appeal on November 23, 2022. (R. 92).

## STATEMENT OF THE ISSUES

1.      Whether the District Court properly rejected the Magistrate Judge's Report and Recommendation and granted summary judgment in favor of FIU, where the record evidence established that Nehme was not a qualified individual, as he could not meet the academic and technical standards of FIU's medical program with or without accommodations.

## STATEMENT OF THE CASE

### I. *Course of Proceedings and Disposition in the District Court*

Plaintiff's Complaint was filed on November 12, 2020 in the Southern District of Florida. (R. 1). Plaintiff asserted two causes of action against the Defendant under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, as amended by the Americans with Disabilities Amendments Act ("ADAAA"). Defendant filed the Motion to Dismiss the Complaint on December 7, 2020. (R. 5). Following voluntary amendment, the operative Amended Complaint was filed on January 11, 2021. (R. 12). FIU filed its Partial Answer and Motion to Dismiss on February 8, 2021. (R. 20; 21). On April 22, 2021, the District Court entered an Order denying Defendant's Motions to Dismiss. (R. 42). Notably, the District Court stated in this Order that the records attached to Plaintiff's complaint certainly appeared to demonstrate that Plaintiff does not meet the academic and technical standards of the educational program given his strong pattern of academic nonperformance. (R. 42, pp. 6-7).

FIU filed its Answer and Affirmative Defenses on May 6, 2021. (R. 43). FIU filed its Motion for Summary Judgment and related filings on March 11, 2022. (R. 55; 56; 57). Plaintiff filed his Response in Opposition to Summary Judgment and related filings on April 11, 2022. (R. 64; 65). FIU filed its Reply and related filings on May 2, 2022. (R. 71; 72). The Magistrate Judge issued a Report and

Recommendation denying Defendant's Summary Judgment on August 22, 2022. (R. 79).

On September 6, 2022, FIU filed its Objections to the Magistrate Judge's Report and Recommendation. (R. 81). Plaintiff filed his Response to Defendant's Objection to the Magistrate Report on September 19, 2022. (R. 85). A hearing was held before the Honorable Judge Aileen M. Cannon on the Motion for Summary Judgment, the Report and Recommendation, and the Parties' objections and responses thereto on October 18, 2022. (R. 88; 89). On November 4, 2022, summary judgment was granted in favor of FIU. (R. 90). The Final Judgment was entered on November 7, 2022. (R. 91). This appeal followed on November 23, 2022. (R. 92).

## II.  *Statement of the Facts*

This appeal arises from a civil rights action brought by the Plaintiff/Appellant, Elie Nehme, against the Defendant/Appellee, Florida International University Board of Trustees ("FIU"). Nehme, a former medical school student at FIU, alleges that FIU discriminated against him based on his disability by dismissing him from the medical school program and failing to provide him with an appropriate minimal distraction room for one (1) shelf exam. (R. 12).

### FIU's Medical Student Handbook and Agreed Terms

The Medical Student Handbook (the "Handbook") when Nehme enrolled in August of 2016 set forth the policies for FIU Herbert Wertheim College of Medicine

("FIU COM"). (R. 55-1, pp. 15-16) (R. 55-6, ¶ 4). Prior to matriculation, Plaintiff, like all medical students, signed the Medical Student Handbook Consent Agreement, agreeing to abide by the policies in the Handbook. (R. 55-7, p. 2) (R. 55-6, ¶ 4) (R. 90, p. 2). Course grades are either assigned a numerical value or determined on pass/fail basis. (R. 55-6, ¶ 6)(R. 55-7, p. 4). A score of 75 is the minimum passing grade in the 1-100 scale for courses. (*Id.*) Grades of 75-79, while passing, indicate marginal competency in a course. (*Id.*)

Period 3 involves a rotation of core clinical clerkships in various areas of study. (R. 55-6, ¶ 5). A score equivalent to the fifth percentile (5%) is required to pass the shelf exams in the Period 3 clerkships. (R. 55-1, p. 93) (R. 55-6, ¶ 17). Failure of a clerkship or poor shelf exam performance, such as three (3) shelf scores in the 5-10 percentile range, may also result in review by the MSEPC. (R. 55-7, p. 5).

The purpose of the Medical Student Evaluation and Promotion Committee ("MSEPC") is to ensure that each student who graduates from FIU possesses the skills and knowledge necessary to competently assume the responsibilities of a medical doctor, to evaluate academic performance in the required curriculum, to assess promotion to the next academic period, and to recommend appropriate intervention in the event of unacceptable academic performance. (R. 55-6, ¶ 9) (R. 55-7, pp. 13-14). In evaluating the ongoing, academic, technical, and professional progress of each student, the MSEPC must consider each student's *aggregate*

*performance* and consider all information available regarding both the student's academic performance and fitness to become a physician. (*Id.*).

Students who fail a course in Periods 1 or 2 due to unsatisfactory academic performance may be offered the opportunity to demonstrate competency with satisfactory performance on a remediation assessment. (R. 55-7, p. 5). An attempt at remediation of a course is counted as a repeat of the course and failure of a remediation assessment is considered equivalent to a second failure of that course. (R. 55-7, p. 5). A student who demonstrates poor academic performance may be placed on "academic probation" (R. 55-7, p. 5). "Probation indicates unsatisfactory progress toward the medical degree and can be a precursor to dismissal from medical school" (R. 55-7, p. 6). "A student placed on academic probation may remain on probation through the end of the academic period in which he or she was placed on probation and through the following academic period." (R. 55-7, p. 7). Students who have passed coursework through remediation of more than one (1) course, or who have demonstrated only marginal performance overall, will be evaluated by the MSEPC and may be required to repeat the period *or may be involuntarily withdrawn*. (R. 55-7, p. 14). Recommendations will be made by the MSEPC based upon all facts available to it and each student's cumulative progress will be considered during each evaluation. (R. 55-7, p. 14). Any student who repeats an academic period shall not be eligible to repeat any other academic period. (R. 55-7, p. 14). A student whose

academic performance does not improve and who fails to meet the terms of probation *may be recommended for dismissal* by the MSEPC. (R. 55-7, p. 7)( R. 90, p. 11).

### Nehme Performs Poorly in Period 1

FIU's COM curriculum is a four-year program divided into 4 periods. (R. 55-6, ¶ 5). During Period 1, Nehme scored a "73" in Genes, Molecules, and Cells, the first course failed by Nehme. (R. 55-1, p. 55)(R. 55-6, ¶ 6). Plaintiff successfully remediated the final exam. (R. 55-6, ¶ 7)(R. 90, p. 2). This attempt at remediation was counted as an initial failure and a subsequent repeat of the material, giving the designation of a "U/75". (R. 55-6, ¶ 7) (R. 55-7, p. 9). Plaintiff also received a score of 79 in three (3) other courses during Period 1: Integrated Functions of the Human Body; Pharmacology; and Pathology and Infectious Disease, demonstrating only "marginal competency" per the Handbook, in over one-third of the core basic science courses. (R. 55-6, ¶ 8) (R. 55-7, p. 9).

### Nehme Repeats Period 2 and Appears Twice Before the MSEPC

In May 2017 during Period 2, Nehme failed Cardiovascular and Respiratory Systems with a final grade of 73. (R. 55-1, pp. 55-56) (R. 55-6, ¶ 10) (R. 90, p. 2). He remediated by retaking the final exam, but he still failed the remediation. (R. 55-1, pp. 55-56) (R. 55-6, ¶ 10) (R. 90, p. 2). He scored only 62 on the Cardiovascular and Respiratory Systems Exam retake. (R. 55-6, ¶ 10). FIU provided Nehme with a "Remediation Plan" issued by the course director to address his issue with managing

time for exams that recommended he meet with an FIU psychologist. (R. 55-7, p. 23).

Next, Nehme met with FIU's clinical psychologist at the Medical Student Counseling and Wellness Center ("MSCWC"), Dr. Desmarais, who performed testing and diagnosed Nehme with "Unspecified Anxiety Disorder" and "Attention-Deficit Hyperactivity Disorder". (R. 55-2, p. 1) (R. 90, p. 2). On July 17, 2017, Nehme met with Dr. Loynaz to register with the Disability Resource Center ("DRC") for accommodations. (R. 55-9, p. 4) (R. 55-1 p. 62). The DRC indicated that Nehme was qualified and eligible for two accommodations: "50% extra time on exams" and a "Minimal Distraction Testing Room". (R. 55-9, p. 17)(R. 90, pp. 2-3).

Because Plaintiff failed the remediation assessment in Cardiovascular and Respiratory Systems, it constituted a *third failure* in his academic career at FIU. (R. 56, ¶ 10). All students with failed remediations will be referred to the MSEPC for evaluation of academic progress pursuant to the Handbook. (R. 55-7, p. 5). On July, 27, 2017, Nehme appeared before the MSEPC for the first time. (R. 55-2, pp. 2-5). At the hearing, Nehme advised the MSEPC that he believed he was having academic difficulties because of health issues, family problems, and would benefit from being granted additional time. (R. 55-2, p. 4). Nehme understood that approved accommodations would not be applied retroactively based on FIU policy. (R. 55-1, p. 65) (R. 55-9, p. 11).

About a week later, the MSEPC placed him on "academic probation", because of the failure of two or more courses, including remediations, but allowed him to continue with the class of 2020 and retake the course with the class of 2021. (R. 55-6, ¶ 11) (R. 90, p. 3). As early as 2017, Nehme was specifically notified that any further course failure or continued poor academic performance would trigger review by the MSEPC with the possibility of adverse recommendations, including repeating an academic period or dismissal. (R. 55-2, p. 4) (R. 55-1, pp. 31, 74) (R. 90, p. 3).

On December 15, 2017, a Professional Incident Report ("PIR") was filed against Plaintiff on behalf of various professors regarding concern for multiple unexcused absences across courses, multiple request to delay exams across courses, and a professionalism issue regarding a quiz in one course. (R. 55-6, ¶ 12) (R. 55-7, pp. 30-35) (R. 90, p. 3). Less than one month later, Nehme failed System Based Practice, which he claimed was due to unexcused absences and not any administration of the test. (R. 55-1, p. 88) (R. 90, p. 3). Shortly thereafter, FIU granted Nehme a voluntary medical leave of absence ("LOA") beginning January 18, 2018 through April 2018. (R. 55-6, ¶ 13) (R. 90, p. 3). In addition, Nehme scored marginally, or below 80, in three (3) other courses during his first attempt at Period 2. (R. 55-6, ¶ 15) (R. 55-7, p. 9).

Nehme was brought before the MSEPC for the second time on March 8, 2018 to discuss the failure of the System Based Practice course, the PIR filed against him,

and continued poor performance. (R. 55-6, ¶ 14) (R. 55-2, pp. 6-9). The MSEPC determined that despite serious concern with his academic performance, Plaintiff would be permitted to repeat Period 2, joining the class of 2021. (R. 55-6, ¶ 14) (R. 55-2, pp. 6-9). Because he *remained on probation*, he was again specifically advised any further course failure or "continued poor academic performance" would trigger review by the MSEPC with the possibility of adverse recommendations, including dismissal. (R. 55-6, ¶ 14) (R. 55-2, p. 9).

On April 2, 2018, Nehme repeated Period 2 joining the class of 2021. (R. 55-1, p. 89). Although Nehme passed all of the same courses in Period 2 with "competent" scores according to the Handbook, he earned "marginal scores" in two courses. (R. 55-6, ¶ 16) (R. 55-7, p. 10). Nehme did not make any complaints about a lack of accommodations during Period 2. (R. 55-1, p. 90).

### Nehme Fails Five (5) Shelf Exams in Period 3 While on Academic Probation

Plaintiff remained on academic probation during Period 3. (R. 55-1, p. 91) (R. 55-6, ¶ 16) (R. 90, p. 3). According to the Handbook, failure of a clerkship or poor shelf exam performance, such as three (3) shelf scores in the 5-10 percentile range, may also result in review by the MSEPC. (R. 55-7, p. 5). During Period 3, Nehme failed a total of five (5) subject shelf exams. (R. 55-6, ¶ 17) (R. 55-8, P. 7) (R. 90, p. 4). Nehme scored in the 3rd percentile on his first attempt of the Family Medicine shelf exam. *Id*. He scored in the 4th percentile on his first attempt of the Surgery

shelf exam. *Id.* He scored in the 2nd percentile on his first attempt of the Neurology shelf exam. *Id.* He scored in the 2nd percentile on his first attempt at the Psychiatry shelf exam. *Id.* And, he scored in the 2nd percentile on the Psychiatry shelf exam retake, resulting in failure of the clerkship. *Id.* In addition, his scores on the OB/GYN shelf exam and the Neurology shelf exam retake, in the 5th percentile and the 7th percentile, respectively, also fall into the "poor shelf exam performance" category within the Handbook provisions. *Id.* (R. 90, p. 4). Thus, pursuant to the Handbook Plaintiff's failure of five (5) shelf exams and extremely low scores on two (2) additional shelf exams subjected him to MSEPC review. (R. 55-7, p. 5).

Nehme acknowledged he received proper ADA accommodations for all shelf exams, both initial and retakes, except for the Psychiatry shelf exam retake. (R. 55-1, pp. 92, 94) (R. 90, p. 11). Nehme failed the initial Psychiatry shelf exam on Monday, February 17, 2020. (R. 55-1, p. 94) (R. 55-10, p. 9). There were only two conference rooms designated as minimal distraction rooms under the purview of COM and utilized by the assessment team for Period 3 testing: AHC2 495 and AHC1 335. (R. 55-11, pp. 2-3). Room reservations for COM were coordinated by Teresa Reyes-Gavilan, M.S., Academic Support Services Administrator. (R. 55-11, p. 2).

On February 18, 2020, Maritere Williams, M.B.A., Associate Director Academic Support Services, part of the assessment team, requested either room AHC2 495 or AHC1 335, whichever available, from 8:00 am to 2:00 pm on Monday

March 2, 2020 for the Psychiatry Shelf Exam Retake. (R. 55-11, pp. 3, 7-11). Both rooms had a previously scheduled event during the six-hour time period. *Id.* Ms. Reyes-Gavilan arranged for one of the previously scheduled meetings to change rooms from AHC2 495 to AHC1 335 due to the number of anticipated participants and the maximum occupancy in AHC2 495 was only 15 people. *Id.* (R. 55-11, p. 4).

Nehme, the sole student, sat for the Psychiatry shelf exam retake in AHC2 495, which was a conference room located in the administrative suites of the fourth floor where general population classrooms are not located. (R. 55-1, pp. 95-96) (R. 55-11, p. 2) (R. 71-1, p. 2). Innah Lachica, the proctor assigned, prepared the room and placed a sign on the outside of the door instructing others to be quiet due to test-taking. (R. 71-1, p. 2). Nehme, admittedly, wore ear plugs provided by FIU. (R. 55-1, p. 104). He received his time and a half accommodation. (R. 55-1, p. 96). He sat facing the window to the outside with his back to the frosted glass pointing to the hallway. (R. 55-1, p. 100). Given Nehme's concern with the temperature, a heater was brought to the room. (R. 55-1, p. 109) (R. 55-4, p. 5). Nehme requested to go to the bathroom three times based on the activity log for the exam. (R. 55-1, p. 105).

During the six-hour time period for the exam retake, one nearby lab room was scheduled from 8:00 am to 12:00 pm for a Neurology Clerkship Exam review and again from 12:00 pm to 5:00 pm for a Clinical Skills lab. (R. 55-11, p. 4). The other Objective Structured Clinical Examination (OSCE) lab rooms are not directly in

front of AHC2 495 and have limited capacity. *Id*. Important, Nehme did <u>not</u> request that the proctor suspend the testing until it became quiet, nor did he ask the proctor to be moved to another room. (R. 55-1, pp. 103-104). Nehme did not vocalize any concerns regarding noise to the proctor. (R. 71-1, pp. 2-3).

### *Nehme's Dismissal and Appeals*

FIU delayed the third MSEPC hearing at Nehme's request and set it for April 9, 2020. (R. 55-1, pp. 117-119) (R. 55-6, ¶17). Even excluding the failed Psychiatry shelf exam retake, Nehme's poor performance on the numerous shelf exams while on academic probation was cause for concern requiring MSEPC review. (R. 55-6, ¶ 18). At the hearing, Nehme was given an opportunity to explain not only the Psychiatry shelf exam retake, but the other shelf exams that he failed. (R. 55-1, pp. 128, 131) (R. 55-2, pp. 12-15). Nehme did not mention that he believed the room he was assigned to for the Psychiatry shelf exam retake was not a minimally distractive room. (R. 55-1, p. 131) (R. 55-2, pp. 12-15) (R. 90, p. 5). Instead, he stated that there was a fire in his neighbor's apartment on the morning of the psychiatry shelf exam retake which affected his performance. (R. 55-1, pp. 125-127) (R. 55-2, pp. 12-15) (R. 55-6, ¶18). His previous poor academic performance was also discussed at the hearing. (R. 55-2, pp. 12-15).

The MSEPC found that Nehme's academic performance continued to be of grave concern. (R. 55-2, pp. 12-15) (R. 90, p. 5). The MSEPC recommended that he

be given the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn. *Id*. Nehme appealed the MSEPC recommendation to the Appeals Committee. (R. 55-2, pp. 16-28). He, again, mentioned the fire affecting his performance on the psychiatry remediation exam and his father's medical issues affecting his performance on the initial Surgery shelf exam. (R. 55-2, p. 17) (R. 55-6, ¶ 20). He also introduced new information relating to a car accident that occurred during the Family Medicine Clerkship that required numerous physical therapy sessions affecting his performance on the initial Family Medicine shelf exam. (R. 55-2, p. 17). He further introduced new evidence of a random drug test conducted one week prior to the Psychiatry remediation exam adding unnecessary stress while studying for the Psychiatry remediation exam. (R. 55-2, pp. 17-18). He added due process concerns about the MSEPC hearing over Zoom due to the pandemic rather than in person and the fact that Dr. Helen Tempest inappropriately acted as the Chair of the MSEPC during his hearing. (R. 55-2, p. 16) (R. 55-6, ¶ 20). Despite being provided the opportunity to introduce new information that impacted his performance on the Psychiatry shelf exam retake, Nehme once again neglected to mention any alleged concern for noisy students outside the minimal distraction room in his appeal letter nor did any of the exhibits attach reference improper accommodations. (R. 55-2, pp. 16-28) (R. 55-6, ¶ 20) (R. 55-1, p. 149) (R. 90, p. 5).

On May 5, 2020, the MSEPC recommendations were adopted by the Appeals Committee and Dean Sackstein affirmed the decision. (R. 55-3, pp. 1-2) (R. 55-6, ¶ 21) (R. 90, p. 5). Nehme appealed the Dean's determination to the Provost or his designee on May 15, 2020. (R. 55-3, pp. 5-12) (R. 55-1, pp. 150, 170). With the assistance of counsel, Nehme **for the first time**, included that he was not properly accommodated for his retake exam in his appeal to the Provost's designee, Elizabeth Bejar, Ph.D., Senior Vice President for Academic and Student Affairs. (R. 55-3, pp. 5-12) (R. 55-1, pp. 153-154, 171) (R. 55-10, pp. 2, 4) (R. 90, p. 5). Dr. Bejar forwarded his appeal letter to Office of Inclusion, Diversity, Equality, and Accessibility ("IDEA") to investigate his claims regarding his disability. (R. 55-1, p. 179) (R. 55-10, p. 2) (R. 90, p. 5).

Three days later, Nehme formally filed a disability discrimination complaint with IDEA. (R. 55-3, pp. 3-4). Dr. Bejar withheld making a decision on Nehme's appeal pending the investigation and periodically asked for updates from IDEA on its investigation. (R. 55-10, p. 2). On August 25, 2020, after conducting an investigation, which included interviewing witnesses and obtaining documentation, FIU's IDEA found that there was insufficient evidence to support the allegations made against Dr. Havas for improper drug testing. (R. 55-5, p. 37). In its "findings" as to COM, it found "Lack of Accommodations for Readiness Assignments" and "Providing Non-Compliant Minimal Distraction Rooms" were "substantiated" in

15

violation of FIU-106. (R. 55-1, p. 175) (R. 55-10, p. 136). An Amended Investigative Copy was issued on September 14, 2020 that included Innah Lachica's interview, which had not been done before, but the findings regarding the readiness assignments, minimal distraction room, and improper drug testing remained the same. (R. 55-10, p. 2).

After receiving the Amended Report, Dr. Bejar requested from IDEA additional information which was the basis for the subsequent independent review. (R. 55-10, p. 3) (R. 55-5, p. 2). Nehme passed all assignments which he claims he did not receive accommodations. (R. 55-1, p. 49). Additionally, IDEA held him harmless, by awarding him 100% on all readiness assignments/quizzes where he claimed he did not obtain accommodations and it did not significantly impact his grades. (R. 55-10, p. 3). He also failed exams when all of the accommodations were given. (R. 55-10, p. 3).

On September 30, 2020, Dr. Bejar upheld the MSEPC decision to dismiss him. (R. 55-10, p. 86). The letter stated: "Based upon a subsequent independent review by IDEA, there is no indication that your allegations had an adverse impact on your academic performance. Thus your dismissal from HWCOM was the result of your academic performance. The remaining basis for your appeal are without merit. The determination of the College remains undisturbed." (R. 55-10, p. 86) (R. 90, pp. 5-6). FIU's decision to dismiss Nehme was based solely on his overall poor

academic performance and was subject to the same sanction as other medical students who were not registered with any disability, but who also performed poorly during the relevant time. (R. 55-6, ¶¶ 27-34). On October 16, 2020, Plaintiff was involuntarily dismissed. (R. 12, ¶ 6) (R. 90, p. 6).

III. _Standard of Review_

The Court reviews a district court's grant of summary judgment de novo. _Melton v. Abston_, 841 F.3d 1207, 1219 (11th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." _Id._ (citing Fed. R. Civ. P. 56(a)). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of his case, and on which he bears the burden of proof at trial. _Id._ Inferences based on speculation and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." _Id._ (citing _Young v. City of Palm Bay, Fla._, 358 F.3d 859, 860 (11th Cir. 2004)).

# SUMMARY OF THE ARGUMENT

Affirming summary judgment in favor of FIU would be consistent with this Circuit's well-settled precedent involving ADA discrimination claims made by dismissed students like Appellant who fail to meet an educational institution's technical standards notwithstanding the provision of accommodations. Appellant was academically hanging-by-a-thread on academic probation after being permitted to repeat a failed course, repeat an entire period of course work after failing, granted a leave of absence, subjected to two specific MSEPC warnings of dismissal for continued poor performance, and then failed five (5) shelf exams. Setting aside any assertion that Appellant did not receive an accommodation for the one contested retake exam, Appellant remains an individual not otherwise qualified under the ADA. The District Court correctly found no triable issue of fact exists as Appellant cannot demonstrate overall competency in light of FIU's policies and his inability to improve his performance.

When the threshold issue of being "otherwise qualified" is unsatisfied, no further analysis is required. However, Appellant was provided with reasonable accommodations under the ADA and was dismissed from FIU's medical program based on a determination that his academic performance while on probation was of "grave concern" in accordance with the Handbook. There is no showing of deliberate indifference on this record. Summary judgment must be affirmed.

# **ARGUMENT**

Title II of the ADA prescribes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

## I. **SUMMARY JUDGMENT IN FAVOR OF APPELLEE SHOULD BE AFFIRMED BECAUSE APPELLANT CANNOT ESTABLISH AN ESSENTIAL ELEMENT OF HIS *PRIMA FACIE* CASE – THAT HE WAS A "QUALIFIED INDIVIDUAL".**

To state a *prima facie* case of discrimination under the ADA, plaintiff must show that he: "(1) is disabled; (2) is a 'qualified individual'; and (3) was subjected to unlawful discrimination because of the disability." *Forbes v. St. Thomas University, Inc.*, 768 F.Supp.2d 1222, 1228 (S.D. Fla. 2010). Whether Nehme is a "qualified individual;" is a threshold question for both his dismissal and failure to accommodate claims. *See Redding v. Nova Southeastern University, Inc.*, 165 F.Supp.3d 1274, 1289 (S.D. Fla. 2016). It is well established, "[i]n the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity," in spite of his handicap. *See Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 Fed. Appx. 776, 781 (11th Cir. 2018) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) and 34 C.F.R. § 104.3(l)(3)).; *Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020)(same); *J.A.M.*

19

*v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016)(same); *Datto v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:20-CV-20360, 2020 WL 3963713, at *7 (S.D. Fla. July 13, 2020). Eleventh Circuit precedent affirming academic dismissals under similar circumstances must be followed.

## A. Appellant's Long-Standing Status on Academic Probation and Continued Poor Performance as set Forth in the Handbook, Even Excluding the Contested Psychiatry Shelf Exam Retake, Establishes a Failure to Meet FIU's Technical Standards for the Medical Program.

As stated in the District Court's Order, "[t]he academic and technical standards students must meet can be and often are established by the institution's internal rules and handbook. *See, e.g.*, *Cooney v. Barry Sch. of L.*, 720 F. App'x 571, 575 (11th Cir. 2018) (relying on school's Rules and Handbook to provide relevant academic standards); *Forbes v. St. Thomas Univ., Inc.*, 456 F. App'x 809, 811 (11th Cir. 2012) (considering provisions of law school's Student Handbook to determine whether student met academic requirements); *cf. Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n.11 (1985) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.")." (R. 90, p. 9). Appellant conceded the Court "correctly recognized" this point. (I.B., p. 33).

On this record, there can be no question that Nehme was not a qualified individual because his academic performance was not meeting the standards of the medical program expressly provided by FIU's Handbook, notwithstanding the

accommodations provided by the University. The undisputed facts demonstrate that, even before his accommodation request, Nehme's academic performance was unsatisfactory. During Period 1 and his first attempt at Period 2, Nehme failed the equivalent of three courses: (1) Genes, Molecules and Cells; (2) Cardiovascular and Respiratory Systems; and (3) Cardiovascular and Respiratory Systems remediation. (R. 55-1, pp. 55-56) (R. 55-6, ¶¶ 6, 10). After requesting and receiving accommodations, he failed Systems Based Practice and a Professional Incident Report was filed against him (R. 55-6, ¶¶ 12, 13) (R. 55-7, pp. 30-35). Additionally, during Periods 1 and 2, he scored only marginally in five (5) courses, excluding any failed courses or remediations. (R. 55-7, p. 9).

As noted in the Order, during Nehme's **repeat** year of Period 2, his performance seemingly improved, although scoring only marginal scores in two courses. (R. 90, p. 10). "During Period 3, however, Plaintiff's academic difficulties resurfaced significantly. It is undisputed that Plaintiff received a score below the 5th percentile on four (4) of his initial clerkship shelf exams and two scores between the 5th-10th percentile range—even upon retake of the exams." (R. 90, p. 10). Pursuant to the Handbook, "three shelf scores in the 5-10 percentile range" constituted "poor shelf exam performance". (R. 55-7, p. 5). Except for the Psychiatry shelf retake exam, Appellant does not dispute that he was properly accommodated for all Period 3 initial clerkship shelf exams, and shelf retake exams. (R. 55-1, p. 92)(R. 90, p. 10).

Pursuant to the Handbook, the MSEPC has the authority to recommend dismissal of any probationary student "whose academic performance does not improve." (R. 55-7, pp. 6-7). Additionally, he was ineligible to repeat Period 3 as he had already repeated Period 2. (R. 55-7, p. 6). Considering Nehme' probationary status as of August 2017, a significant factor continuously ignored by Appellant, and his continued poor performance clearly evidenced in his earning below the tenth percentile in at least six (6) shelf exams, FIU has produced ample uncontroverted evidence of Nehme's inability to meet the requirement of FIU's medical program.

Nehme's inability to satisfy the academic requirements, before or after his accommodation request, renders him not "qualified" as a matter of law. Particularly instructive are the Eleventh Circuit cases granting and affirming summary judgment in favor of universities on similar claims under the ADA, which stand for the proposition that if a student continues to perform poorly even after receiving accommodations, the student is not otherwise qualified for purposes of the ADA. In *Goldberg*, a medical student performed poorly during his first two years prior to requesting accommodations. *Goldberg*, 838 Fed. Appx. at 480-491. After requesting accommodations and repeating Period 2, plaintiff failed a midterm exam, one course, and two clerkships. *Id*. The medical school ultimately dismissed the student based on failure of only one clerkship and history of poor academic performance. *Id*. The district court found that Goldberg was not an otherwise qualified individual because

his academic performance was unacceptable despite receiving accommodations. *Id.* at 491. The Eleventh Circuit affirmed summary judgment in the university's favor. *Id.* at 492.

In *Zainulabeddin*, a medical student with ADHD was dismissed from the program for poor academic performance prior to any accommodations. 749 Fed. Appx. at 778-79. She was reinstated after learning the medical school erred in not previously providing her with accommodations. *Id.* Even with the provision of accommodations, she still failed two courses. *Id.* at 779-780. She was once again dismissed from the medical school based on her two failed courses that year and prior academic difficulties. *Id.* at 780. The district court found that the student was not "otherwise qualified." *Id.* at 781. The Eleventh Circuit affirmed summary judgment in favor of the university and concluded that the record made clear that the student was dismissed from the program for poor academic performance and consistent with its policies set forth in the student handbook. *Id.* at 782-783.

Similarly, in *Forbes v. St. Thomas University, Inc.,* the Eleventh Circuit affirmed a grant of summary judgment for the university where the student on academic probation failed to meet the academic standards of the law school even with accommodations. 456 Fed. Appx. 809 (11th Cir. 2012); *see also Cooney v. Barry School of Law*, 720 Fed.Appx. 571 (11th Cir. 2018) (affirming district court's grant of summary judgment for law school, finding dismissed student was not otherwise

qualified where he failed to meet the minimum academic requirements pursuant to Barry's rules); *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921 (11th Cir. 2016) (affirming dismissal and finding student was not otherwise qualified); *Ellis v. Morehouse Sch. of Med,* 925 F. Supp. 1529, 1532 (N.D. Ga. 1996).

Furthermore, other appellate courts across the nation have granted summary judgment against medical school students under similar circumstances where they have not met the essential requirements of the educational institutions failing to establish a prima facie element under the ADA as otherwise qualified. In *Zukle v. Regents of Univ. of California*, 166 F.3d 1041 (9th Cir. 1999), a student who experienced academic difficulty from the beginning, failed a clerkship, because of unsatisfactory clinical performance despite passing the written exam, while on academic probation. *Id*. Pursuant to the medical school's bylaws, the Promotions Board voted to dismiss Zukle from the medical school for "failure to meet the academic standards of the School of Medicine" upon consideration of her academic performance throughout her tenure at the medical school. *Id*. The Court found that that even with accommodations, Zukle consistently failed to achieve passing grades in her courses, **even though she was able to remedy some of her failing grades in her pre-clinical years by retaking exams**. *Id*. (emphasis added). In *Khan v. Midwestern Univ.*, a student who struggled academically in medical school from the

outset, was placed on academic probation and allowed to retake all failed year 1 courses, which she passed. 879 F.3d 838 (7th Cir. 2018), as amended on denial of reh'g (Feb. 26, 2018). According to the Seventh Circuit, "[T]he second chance did not erase her prior record but allowed her to prove that she could be successful going forward." *Id*. She continued to perform poorly despite receiving accommodations and a medical leave, resulting in dismissal. *Id*. The court found that she was not otherwise qualified and affirmed the district court's grant of summary judgment for university. *Id*. FIU also relies on various cases where students' dismissals are on the heels of academic probation. [1]

---

[1] *See also Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874 (S.D. Tex. 2012), aff'd, 524 Fed. Appx. 93 (5th Cir. 2013)(summary judgment affirmed for university, finding student was not dismissed from physician assistant program due to her disability after failing a course while on probation, despite satisfactory GPA, in accordance with school policy); *Zimmeck v. Marshall Univ. Bd. of Governors,* 632 Fed. Appx. 117 (4th Cir. 2015)(affirming summary judgment for medical school after finding that student was not otherwise qualified for the medical school program, where student was dismissed for academic reasons after being placed on academic probation and repeatedly notified that further violation of its professionalism policy could result in dismissal); *Millington v. Temple Univ. Sch. of Dentistry*, 261 Fed. Appx. 363 (3d Cir. 2008)(affirming summary judgment based on plaintiff's inability to show she was otherwise qualified when she was on and off academic probation and received two leaves of absence, struggled academically from the inception of her dental studies and continued to struggle even after the provision of accommodations); *Herrera v. Community College of Allegheny County*, 2017 WL 2813616 (W.D. Penn. June 29, 2017) (granting summary judgment for college, finding that student was not "otherwise qualified" to remain in the physical therapy assistant program where student with ADHD failed to achieve required scores in two courses while on probation, and differentiating student from one in good academic standing); *Minaei v. Univ. of Washington Sch. of Med.*, 2018 WL 1508976, at *1 (W.D. Wash. Mar. 27, 2018)(granting summary judgment based on

Appellant's academic struggles began in Period 1, prior to requesting and receiving accommodations, and continued despite receiving accommodations of 50% extra time on exams and a minimal distraction room with multiple opportunities for remediation. The undisputed record, excluding the Psychiatry shelf retake exam, effectively demonstrates his dismissal was based on a pattern of poor academic performance and in accordance with the Handbook. Even looking at Period 3 in isolation from his performance in other Periods, it is undisputed that Appellant was on academic probation and scored below the 10th percentile on six (6) shelf exams, excluding the Psychiatry shelf exam retake, thus, exceeding the Handbook's standard of acceptable performance by at least double. Accordingly, the District Court properly concluded that Nehme's "performance on his clerkship shelf exams and retake exams alone—even excluding the Psychiatry shelf exam retake— establishes 'poor academic performance' under the Handbook's standards and demonstrates without dispute that MSEPC had grounds to dismiss Plaintiff from HWCOM." (R. 90, p. 11).

### B. Appellant's Suggested Inference Regarding "Overall Competency" is Unreasonable and Not Supported By Law.

---

plaintiff's inability to meet the essential requirements to remain at the medical school even with reasonable accommodations where student on academic probation continued to perform poorly).

A significant portion of Appellant's Initial Brief focuses on his belief that the evidence of "successful completion of all his classes, including his Period 3 clerkships, and his overall 'competency' as a medical student was not properly considered" and the "cumulative effect of this record evidence thus undermines any claim that Nehme was not academically qualified to continue as a medical student at HWCOM." (I.B., pp. 33-38).[2] That argument, however, ignores the standards required of FIU's medical program, standards which allow for remediation and adverse recommendations, but require the MSEPC to review each student's aggregate performance. Moreover, this argument is not supported by law. *See Goldberg v. Fla. Int'l Univ. Bd. of Trustees*, No. 18-20813-CIV, 2020 WL 1815360, at \*6 (S.D. Fla. Apr. 10, 2020), aff'd sub nom. *Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487 (11th Cir. 2020) (concluding "[t]hat the College permitted Goldberg to continue his studies at sufferance, so-to-speak, and provided him repeated opportunities to rescue his foundering medical career, is irrelevant to this Court's analysis, and certainly not competent evidence that Goldberg was qualified."). The

---

[2] Any inference regarding "that the clinical component was a more important part of the clerkships than the final exams" is not only irrelevant but unsupported and unreasonable. (I.B., p. 37 at n.3). University faculties have the widest range of discretion in making judgments as to academic performance of students and their entitlement to promotion or graduation and evaluation of student performance requires expert evaluation not suited for court intervention. *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225-26 (1985); *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90 (1978).

Court disagreed with Goldberg's contention that by continuing to advance him further into the medical school, the university deemed him qualified because such an "inference would require a jury to consider isolated facts out of context and adopt a misleading impression of the evidence" which is not reasonable and insufficient to establish that he is was qualified. *Id*. at n.1.

Appellant is incorrect in his contention that the District Judge focused on what "may" or "could have" occurred. (I.B., pp. 38-40). Rather, the District Judge did not agree with Appellant's contention that Dr. Obeso's testimony supported his argument that "HWCOM still would have passed him over to Period 4 despite his academic difficulties." (R. 90, pp. 11-12). The District Court Order focused on the objective fact that Nehme was performing poorly under the Handbook which provides three scores in the 5-10 percentile range constitute poor shelf exam performance. (R. 90, pp. 11-12). As Nehme scored below the 10th percentile on six (6) shelf exams, *excluding* the Psychiatry shelf exam retake, it is undisputed that he was performing poorly by FIU's own standards, **even with accommodations**. The testimony of Dr. Obeso along with the provisions of the Handbook, Nehme's probationary status, and prior MSEPC hearings, clearly demonstrated Nehme's inability to meet FIU COM's standards.

Whether or not Nehme would have been called to the MSEPC but for the failure of the Psychiatry course is immaterial to whether he was a qualified

individual. Regardless of Appellant's contention that the "sole reason" triggering MSEPC review was the failure of the Psychiatry retake exam, which led to the failure of the Psychiatry Clerkship, the MSEPC reviewed his overall performance and determined that his academic performance was of "grave concern". (R. 55-2, pp. 13-15). Interestingly, the record presented to the MSEPC showed that the review packet had a cover page with a "Probation" designation and color-coded spreadsheet of Nehme's poor performance on the Period 3 shelf exams. (R. 55-8, p. 7). Even excluding the contested Psychiatry retake exam, the undisputed record demonstrates that Plaintiff was not able to meet the academic standards of FIU notwithstanding the provision of accommodations.

Appellant's attempts to circumvent the undisputed record establishing his inability to meet the academic requirements of FIU's medical program in accordance with its Handbook is not supported by the record, including the following failures:

(1) Genes, Molecules, Cells course
(2) Cardiovascular and Respiratory Systems course
(3) Cardiovascular and Respiratory Systems course remediation
(4) System-Based Practice course
(5) Family Medicine clerkship shelf exam
(6) Surgery clerkship shelf exam
(7) Neurology clerkship shelf exam
(8) Psychiatry clerkship shelf exam
(9) Psychiatry clerkship shelf exam retake

Accordingly, the District Court correctly concluded that "summary judgment is warranted on both claims because there is no triable question that Plaintiff is not a qualified individual under the ADA." (R. 90, p. 11).

## II. DESPITE APPELLANT'S INABILITY TO SATISFY THE QUALIFIED INDIVIDUAL ELEMENT, A THRESHOLD ISSUE FOR BOTH CLAIMS, SUMMARY JUDGMENT IN FAVOR OF FIU SHOULD NONETHELESS BE AFFIRMED

To prove a failure to accommodate claim, Nehme was required to show that he: (1) is disabled; (2) is a "qualified individual"; and (3) was subjected to unlawful discrimination because of the disability by not being a provided a reasonable accommodation. *McKane v. UBS Financial Services, Inc.*, 363 Fed. App'x 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). As discussed *supra I*, the uncontroverted record clearly demonstrates Appellant cannot satisfy the "qualified individual" element of an ADA claim. Because Nehme was not a "qualified individual", the District Court was not required to address the remaining issues addressed in the Magistrate's Report and Recommendation. *Aponte v. Akima Glob. Servs., LLC*, No. 17-24184-CIV, 2022 WL 2289646, at *13 (S.D. Fla. May 31, 2022), *appeal dismissed*, No. 22-12052-GG, 2022 WL 4359201 (11th Cir. July 14, 2022)(affirming summary judgment where plaintiff was not a qualified individual and the court need not address the remaining arguments). Notwithstanding Appellant's inability to satisfy the qualified individual

element of his claims, the Magistrate's Report should be rejected in its entirety and summary judgment should still be granted.

## A. FIU Provided Appellant With Reasonable Accommodations.

The undisputed record shows that FIU provided Nehme with reasonable accommodations, even for the Psychiatry shelf exam retake, the *single* exam at issue in this matter. The law does not require a grant of every accommodation requested by an individual; rather an institution need only provide accommodations that are reasonable. *Meisenhelder v. Florida Coastal Sch. of Law, Inc.*, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010), aff'd, 395 Fed. Appx. 669 (11th Cir. 2010). The ADA does not require the perfect elimination of all disadvantages that may flow from the disability, nor does it require lowering standards. *Id*. (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 297, 413 (1979)). There is no requirement for the employer to provide the accommodation of employee's choice, or "the maximum accommodation or every conceivable accommodation possible." *Siudock v. Volusia Cnty. Sch. Bd*., 568 F. App'x 659, 664 (11th Cir. 2014)(citations omitted). Even if an institution has historically provided accommodations exceeding what is required under the ADA, the institution is not under a continuing legal obligation to do so. *See D'Onofrio v. Costco Wholesale Corp*., 964 F.3d 1014, 1022 (11th Cir. 2020), cert. denied, 141 S. Ct. 1435 (2021); *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017).

Appellant was approved for reasonable accommodations of 50% extra time on exams and a minimal distraction testing room. (R. 55-9, p. 17). Obviously lacking in Appellant's argument is any authority or specific guidelines provided by the ADA in relation to a minimal distraction room to support his contention that the FIU failed to provide him with the "required reasonable accommodation of a minimal distraction room for the Psychiatry shelf exam retake" as none exists. (I.B., pp. 44-45). However, the definition provided by FIU's DRC states:

> "[t]he student is tested in an environment which minimizes distractions for the student. Each student has different levels of distractibility and different stimuli which may distract them. Typically, students need an environment which minimizes both auditory and visual distractions. A distraction-reduced environment does not necessitate the student's testing in a private room, nor does it mean that an environment is completely distraction free." (R. 55-10 p. 34).

The factors to consider in FIU's reasonable attempt to provide a minimal distraction room for the Psychiatry shelf exam retake are: (1) that Nehme was assigned to a **private** conference room located in administrative suites designated and regularly utilized as a minimal distraction room for test taking purposes by Period 3 students; (2) Nehme sat for the Psychiatry shelf exam retake, **alone**, with a proctor, without the presence of any additional students; (3) the room was not located near general population classrooms; (4) Nehme was provided earplugs by FIU – *a critical fact not considered in FIU's IDEA investigation*; (5) signage was placed outside of the testing room to be quiet; (6) Nehme was given the allotted time-and-

a-half to take the retake exam; and, (7) he was seated with his back to the frosted glass that faced a hallway. (R. 55-11, pp. 2-3) (R. 55-1, pp. 95, 96, 100, 104) (R. 71-1, p. 2). FIU assigned Nehme to this room based on limited space availability of designated accommodation testing rooms for the extended time period of six hours. (R. 55-11, p. 4).

Appellant's argument that in particular, the IDEA report findings that FIU "failed to provide Nehme with the required reasonable accommodation of a minimal distraction room for the Psychiatry shelf exam retake" creates an issue of fact, which was "relied upon the Magistrate Judge in recommending denial summary of judgment" is inconsistent with applicable law. (I.B., p. 46). In *Forbes,* the law student alleged that the university failed to provide an environment that would "best have accommodated" her disability. *Forbes*, 456 Fed. Appx. 809, 810 (11th Cir. 2012). The university granted her accommodations including "a distraction-reduced location." *Id*. at 811. The plaintiff was provided with a "semi-private room" along with a proctor and three or four other students with disabilities. *Forbes*, 768 F.Supp.2d 1222, 1226 (S.D. Fla. 2010). She did not complain until weeks later, after receiving her grades, despite writing an email regarding incorrect belief that she was denied time-and-a-half. *Id*. at n. 2. This Court concluded that "there is no genuine dispute that the university accommodated Forbes's alleged disability and that those accommodations were reasonable," where plaintiff failed to provide university any

information that her alleged disability required a private testing room and she did not complain about taking her examinations in a room with four classmates and a proctor *Forbes*, 456 Fed. Appx. at 812. Summary judgment in favor of the university was affirmed. *Id.*

The Appellant and the Magistrate Report correctly state that FIU had the "affirmative duty to reasonably accommodate the known physical or mental limitations of [Nehme as] an otherwise qualified person. *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010)." (R. 79, p. 9) (I.B., p. 47). However, the *known* mental limitations of Plaintiff were only that he required additional time to take exams – an important fact not considered in IDEA's investigation. The letter from Dr. Desmarais providing the DRC with a psychological evaluation only recommended extra time for exams, not a minimal distraction room. (R. 55-9, p. 14). Plus, prior to Plaintiff's request for accommodations, FIU recommended he visit the MSCWC for time management deficiencies, and at his first hearing he advised the MSEPC he would benefit with more time. (R. 55-2, p. 4)(R. 55-7, p. 23). The Record does not demonstrate that FIU knew he would be easily distracted despite the various efforts put in place to minimize distractions on the date of the Psychiatry shelf exam retake, other than his own testimony that he was distracted and his subjective belief that the proctor should

have known because "during the exam, Nehme would look up to Lachica…to express his frustration." (I.B., pp. 19-20).

In addition, FIU argues that it cannot be held liable for the failure to accommodate where "the [student] is responsible for the breakdown of the interactive process." *Palmer v. McDonald*, 824 Fed. Appx. 967, 980 (11th Cir. 2020). "[W]hen the parties are 'missing information…that can only be provided by one of the parties…the party withholding the information may be found to have obstructed the [interactive] process.'" *Id*. (citing *Jackson v. City of Chi*., 414 F.3d 806, 813 (7th Cir. 2005). The interactive process is ongoing and is meant to assist with not only identifying and approving reasonable accommodations, but with implementation as well. *See U.S. E.E.O.C. v. UPS Supply Chain Solutions,* 620 F. 3d 1103, 1110-1111 (9th Cir. 2010)(finding employer's duty to accommodate and engage in an interactive process to be continuing especially when issues regarding the effectiveness of an approved accommodation arise).

Here, it is uncontested that Appellant's proverbial "hail mary" pass claiming disability discrimination to save his medical career at FIU occurred after three important events documented in the record: he did not complain about alleged distractions during the Psychiatry shelf exam retake; he did not advise the MSEPC about alleged distraction at the hearing despite the opportunity to identify the cause of failure and providing an alternative cause; and, he did not inform the Appeals

Committee about the error made by the MSEPC regarding an alleged lack of accommodations for the one test, despite providing additional reasons for his failure. (R. 55-1, pp. 103-104, 106, 128, 131, 144-149) (R. 71-1, p. 3) (R. 55-2, pp. 12-28). The fact that Nehme did not complain about the exam room until this stage only after seeking legal counsel indicates that he was complacent with the room provided, until his last form of appeal for reconsideration of his dismissal from medical school. *Forbes*, 768 F. Supp. 2d 1222, 1226 n .2 (S.D. Fla. 2010); *Alvarez v. Sch. Bd. of Broward Cnty.*, 208 F. Supp. 3d 1281, 1286 (S.D. Fla. 2016)("[T]he law does not require the [defendant] to ignore misconduct that has occurred because the [claimant] subsequently asserts it was the result of a disability.")(collecting cases).

While misconstruing FIU's argument, Appellant contends that there is no "one-sided obligation on the part of the disabled person" to "alert the providing entity that the accommodation should be provided when it is not." (I.B., p. 48). Rather, FIU argues that Nehme was required to notify FIU that he believed the minimal distraction room provided was unsatisfactory. *See Bowens-Thomas v. Alabama Coop. Extension Sys.*, No. 2:16-CV-621-WKW, 2022 WL 617184, at *8 (M.D. Ala. Mar. 2, 2022)(granting summary judgment on ADA claims because plaintiff failed to provide sufficient evidence that she was denied reasonable request for accommodation given plaintiff did not make defendant aware that accommodations were ineffective). Appellant's failure to express his dissatisfaction

with the accommodation provided in a timely manner should preclude FIU from liability. (R. 55-1, pp. 107, 115, 131-132, 148, 171); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278 (11th Cir. 1997)(no liability for failure to accommodate where breakdown in the interactive process regarding accommodations was due to plaintiff, not defendant).[3]

FIU satisfied its "affirmative duty" to provide a "reasonable" accommodation by delivering an environment which minimized both auditory and visual distractions, room AHC2 495, to Nehme for the Psychiatry shelf exam retake, in accordance with FIU's definition of a minimal distraction room. That the testing room was not Nehme's preferred test-taking room, not entirely distraction-free, or there were outside distractions that he did not complain about in order to resolve (I.B., pp. 19-20, 44-45) is of no consequence to the analysis. *See Forbes*, 456 Fed.

---

[3] Other courts have ruled in the university's favor as a matter of law where students did not raise any concern of about the accommodation provided until **after** receiving grades. *See Oser v. Capital University Law School*, 2009 WL 2913919, at *9-11 (S.D. Ohio 2009)(concluding that plaintiff failed to establish all requisite elements of his ADA claim where he failed to raise any concerns about the modified accommodation until after he received his grades and learned that he did not meet the GPA cut-off); *Frank v. University of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007)(finding no issue of material fact where student made no complaint about the lack of accommodations before, during or as he left the exam room for one examination); *Hoppe v. College of Notre Dame of Maryland*, 835 F. Supp. 2d 26 (D. Md. 2011) (granting summary judgment on accommodation claim despite allegation that "solitary environment" was not provided when student was taking test with another student in lab with a chalkboard divider between them); *Martin v. Southern Illinois University School of Medicine*, 2017 WL 4780613 (C.D. Ill 2017).

Appx. at 812 (affirming summary judgment in favor of university on accommodation claim where student failed to provide university any information that her alleged disability required a private room and did not complain about taking her examinations in a room with four classmates and a proctor); *see also e.g. Sellers v. Wake Forest University Baptist Medical Center*, 2022 WL 198736 (M.D.N.C. Jan. 21, 2022)(granting summary judgment on ADA failure to accommodate claim where employee was provided with accommodation and at no point informed employer that accommodation was inadequate).

Furthermore, FIU has repeatedly emphasized  that IDEA's internal investigation and subsequent finding was based on its interpretation of internal guidelines, and not a legal analysis of a failure to accommodate claim under the ADA, a point ignored by both Appellant and the Magistrate Judge[4]. *See Patel v. City of Madison, Alabama*, 2018 WL 1881326, at *10 n. 18 (N.D. Ala. Apr. 19, 2018), aff'd, 959 F.3d 1330 (11th Cir. 2020)(stating that the legal conclusions of an internal report should not affect the independent analysis of the court); *Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 355 (6th Cir. 2015)(affirming summary judgment in favor of university on failure to accommodate claim despite university's

---

[4] The Magistrate Judge, rather than undertake an independent analysis on whether the uncontested facts surrounding the Psychiatry shelf exam retake constituted a failure to provide a reasonable accommodation under the ADA, relied instead exclusively and without any scrutiny on the IDEA report's internal findings. (R. 79).

failure to follow its internal policies). Thus, Appellant cannot demonstrate a prima facie case because he cannot show the third element, that FIU did not reasonably accommodate his known mental limitations.

### B. The Record Does Not Establish Deliberate Indifference Under Either Claim as no Discriminatory Animus can be Gleaned from the Evidence

To prevail on a claim for compensatory damages under the ADA, a plaintiff must establish that the entity that he has sued engaged in intentional discrimination, which requires a showing of "deliberate indifference." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012). "Deliberate indifference," is an "exacting standard." *Id*. at 344 (citing *Doe*, 604 F.3d at 1259). It requires proof that "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Id*. Moreover, in order to hold a government entity liable, such as FIU, the plaintiff must demonstrate that an "official who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf and who ha[d] actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id*. at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 290 (1998)). The Eleventh Circuit has recognized that the "exacting standard" requires a showing more than "gross negligence". *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014).

Nehme has not demonstrated that any FIU official had actual knowledge that the accommodations provided had an impact on his *overall* academic performance leading to the dismissal decision or that any FIU official actually *knew* that the room provided for the Psychiatry shelf exam retake was not an adequate accommodation and deliberately chose not to provide an effective accommodation. The uncontroverted evidence is that as soon as Nehme advised, *in his final appeal,* an official who had authority to address the alleged discrimination and to institute corrective measures, FIU adequately responded and corrective actions were taken. Prior to May 15, 2020, Plaintiff had not notified any FIU official of any alleged failure to accommodate; thus, no FIU official had knowledge of any alleged discrimination prior to that date. (R. 55-1, p. 171)(R. 55-10, p. 4 ¶ 11).

i.     **Alleged Failure to Accommodate**

The Initial Brief attempts to ignore his obvious failure to notify FIU of any alleged dissatisfaction with the minimal distraction room provided by compounding all of the alleged distractions outside of the testing room and relying on Ms. Lachica's subjective perception of her being distracted and statements attributed to Ms. Reyes-Gavilan in the IDEA Investigative Report.

First, Appellant relies on various statements of Academic Support Services Administrator Teresa Reyes-Gavilan, a trained special education teacher, who assigned Nehme to AHC2 495 based on limited room availability. (I.B., pp. 52-53).

However, her testimony and affidavit had the benefit of the screenshots of the Wellsky online scheduling system for accurate information where there is no indication of that as part of the summary of her interview. (R. 55-11, pp. 14-24). The record shows the limited rooms available and FIU's attempt to provide a reasonable accommodation to Nehme under the circumstances given Ms. Reyes-Gavilan's actions in rearranging previously scheduled events to ensure Nehme had a private room, designated as a minimal distraction room, to take the Psychiatry shelf exam retake. (R. 55-11, pp. 7-24).

Next, Appellant's contention that Ms. Lachica "deliberately and knowingly chose to shirk these responsibilities and do nothing" blatantly ignores his failure to express any concerns with the noise in the hallway. Nehme concedes that he did not alert Ms. Lachica of any distractions. (I.B., p. 19). That Ms. Lachica was subjectively distracted by the noise in the hallway is irrelevant and ignores that fact that Nehme had earplugs provided by FIU and was facing with his back toward the frosted window on the wall shared with the hallway. (I.B., p.20). It is clear that the proctor did not take any action because Plaintiff did not apprise her that the noise outside distracted him. (R. 63-4, pp. 55-58). Ms. Lachica brought in a space heater when he indicated it was cold and allowed him to go to take breaks during the exam, either for the bathroom or to drink water, when he requested. (R. 55-1, pp. 104, 110) (R. 55-4, p. 5)(R. 63-4, pp. 8-11). Nehme's failure to alert FIU of his distractibility

during the exam denied FIU the opportunity to take any action in an effort to resolve the issue at the time.

Furthermore, the IDEA Report is not an admission by FIU that it failed to provide a reasonable accommodation for the Psychiatry shelf exam retake. (I.B., p. 46). Again, FIU's IDEA investigative report did not conclude Plaintiff failed the final shelf exam because he was placed in AHC2 495. (R. 55-10, p. 34). IDEA's internal investigation and subsequent finding was based on its interpretation of internal guidelines, not a legal analysis of a failure to accommodate under the ADA.[5] *See Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 355 (6th Cir. 2015)(affirming summary judgment in favor of university). Depending on the statement relied upon and the purpose for which it is offered, it may not be considered at summary judgment if not admissible at trial. *Georgia Power Co. v. ABB Inc.*, 2019 WL 11505721, at *5 (N.D. Ga. Feb. 27, 2019), *aff'd,* 811 Fed. Appx. 517 (11th Cir. 2020)(stating the court is not bound by report's legal conclusions); *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302–03 (11th Cir. 1989)(stating that "legal conclusions are inadmissible because the jury would have no way of knowing whether the preparer of the report was cognizant of the requirements

---

[5] For example, IDEA's erroneous analysis considered him qualified solely on the basis of being designated as a student with a disability at FIU—not his overall academic performance or competence as a future physician like the members of the MSEPC did. (R. 63-1, p. 37). Below, this was a basis to object to the Report and Recommendation as the incorrect legal structure was applied. (R. 81, p. 10).

underlying the legal conclusion and, if not, whether the preparer might have a higher or lower standard than the law requires"); *see also Doe 1 v. City of Chicago*, 18 C 3054, 2020 WL 1166222, at *12 (N.D. Ill. Mar. 11, 2020)(finding City's internal investigation determining there was sufficient evidence of violation of City's sexual harassment policy, tracking that of IHRA, made by City's EEO division, was not a judicial admission conclusively establishing liability under Title VII).

Appellant has not presented legal arguments that Ms. Reyes-Gavilan or Ms. Lachica had actual knowledge of a substantial likelihood of harm to a federally protected right or enjoyed the authority necessary under the deliberate indifference analysis. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134-36 (11th Cir. 2019); *Friedson v. Shoar*, 2020 WL 4785072 (M.D. Fla. Aug. 18, 2020), aff'd, 2021 WL 5175656 (11th Cir. Nov. 8, 2021); *Cesaire v. Tony*, 2020 WL 5750011, at *2 (S.D. Fla. Sept. 24, 2020)(dismissing deliberate indifference claim because child protective investigator was not an official high enough on the command chain to speak for defendants as a whole).[6]

---

[6] In addition, the Court should be hard pressed to find "willful blindness" related to any alleged systemic discrimination or failure to train, as suggested by Nehme, where FIU has the DRC, with 15 staff members, dedicated to assisting students with documented disabilities; provides specific procedures to obtain reasonable accommodations at COM; and where Stephen Loynaz, with a master's degree in mental health counseling and a doctorate in higher education, serves as the liaison for FIU's COM. (R. 55-9, pp. 1-2). At most, Nehme's arguments (I.B., p. 45) may be considered negligence which is insufficient to meet the exacting standard of

Accordingly, Appellant has failed to show that FIU acted with deliberate indifference or intentional discrimination as is necessary to recover monetary damages under the ADA for purposes of his failure to accommodate claim. *See McCullum*, 768 F.3d at 1148-49 (affirming summary judgment on an ADA claim given no reasonable jury could find deliberate indifference where hospital staff believed the accommodations provided were effective, and plaintiff did not inform staff otherwise).

### ii. Purported Wrongful Dismissal

Appellant cannot establish deliberate indifference for compensatory damages under Count II, which hinges on Dr. Bejar's decision to uphold the MSEPC and Appeals Committee (both groups of medical doctors) recommendation to dismiss Nehme based on his overall poor academic performance. Dr. Bejar, as the Provost's designee, was the only FIU official with the authority to determine whether the decision of the Dean based upon the MSEPC's recommendation to dismiss Plaintiff, a decision which was upheld by the Appeals Committee, should be affirmed.

In his final appeal to the Provost's designee, Nehme, **for the first time**, included that he was not properly accommodated for his Psychiatry shelf exam retake. (R. 55-10, pp. 2-4). Upon receiving Nehme's concerns of discrimination, Dr.

---

deliberate indifference. *See Martin v. Halifax Healthcare Sys.*, Inc., 621 Fed. Appx. 594, 604 (11th Cir. 2015); *McCullum*, 768 F.3d at 1147.

Bejar forwarded his complaint to the IDEA and suspended rendering a decision on his appeal pending the IDEA investigation. (R. 55-10, pp. 2-3)(I.B., p. 23). Dr. Bejar did not choose to ignore the Amended IDEA Report when she undisputedly requested additional information regarding the impact of any alleged failure to accommodate on his grades and overall academic performance. (R. 55-10, p. 3). An audit was thus conducted, revealing no significant impact on his grades. (R. 55-10, p. 3). There was no way to determine whether Plaintiff's failure of the Psychiatry shelf exam retake was, *in fact*, a result of his placement in AHC2 495. (R. 63-5, pp. 8-10). This is especially true considering his previous failure of the initial Psychiatry shelf exam even *with* accommodations and the numerous reasons provided by Nehme as to why he failed the retake exam. (R. 55-1, p. 94).

Despite being unable to conclusively determine the impact of the placement in AHC2 495 on his academic performance, reviewing "the student's performance holistically" as Dr. Bejar was required to do, including the IDEA report and MSEPC documents, which IDEA did *not* have the benefit of in its investigation, it is undisputed that Plaintiff failed multiple shelf exams in Period 3, even excluding the Psychiatry shelf exam retake, and such performance while on academic probation was appropriate cause for dismissal based on the guidelines set forth in the Handbook. (R. 55-10, p. 3). Moreover, without any indication that his academic performance as a whole was adversely impacted by his allegations concerning a

*single* examination in nearly three years of receiving accommodations, Dr. Bejar chose to uphold the decision of the MSEPC.[7] Because he ultimately continued to have a pattern of poor performance even after receiving disability accommodations, FIU's subsequent dismissal decision cannot reasonably be attributed to discrimination. *See Zainulabeddin*, 749 Fed. Appx. at 784.

Relying on the rejected Magistrate's Report, Appellant contends that there were triable issues of fact due to the alleged contradiction in Dr. Bejar's testimony that there was nothing in the IDEA reports that indicated FIU's failure to provide Plaintiff with the required minimal distraction room adversely affected his performance on the Psychiatry shelf exam retake with the IDEA's explicit findings and Ms. McWhorter and Ms. Hall's testimonies. (I.B., pp. 40-41; R. 79, p. 10). However, Appellant incorrectly construes FIU's investigative findings as "explicit findings" when in actuality, the language in the Amended IDEA report provides,

---

[7] The MSEPC's purpose is to ensure each student who graduates from FIU possesses the skills and knowledge necessary to competently assume the responsibilities of a medical doctor and recommend appropriate intervention in the event of unacceptable academic performance which requires the MSEPC to review each student's aggregate academic performance. (R. 55-6, ¶¶ 10, 13) (R. 55-7, pp. 13-14). When the MSEPC determines that a student's academic performance has not improved and fails to meet expectations, FIU must dismiss a student who continues to perform poorly. (R. 90, p. 11). Such academic judgments should be given deference. *See Sirpal v. Univ. of Miami*, 2011 WL 3101791, at *14 (S.D. Fla. July 25, 2011) *aff'd*, 509 Fed. Appx. 924 (11th Cir. 2013) ("whether a student is qualified to be a physician is an academic judgment that 'requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.").

"[t]here is evidence to corroborate his belief that: Nehme's placement in AHC2 495 (a conference room) did not meet the standard for a minimal distraction room identified by the ADA and this impacted his ability to effectively concentrate while taking his High-Stakes Psychiatry shelf exam."

(R. 55-10, p. 34). Even assuming that Ms. McWhorter and Ms. Hall provided testimony contradicting Dr. Bejar's conclusion that his allegations did not have an adverse impact on his academic performance, which the Report relies on in its assessment that summary judgment should be precluded (I.B., p. 55), such contradictions do not meet the standard of deliberate indifference.

Further, the steps taken by FIU leading up to his dismissal show that discriminatory intent is nowhere found on this record. After Nehme's third course failure, the University created a "Remediation Plan" recommending he visit the MSCWC to address his time management deficiencies. (R. 55-7, p. 23). Nehme then sought accommodations with FIU's DRC which awarded him 50% extra time on exams and a minimal distraction testing room. (R. 55-9, p. 17). Somewhat simultaneously, Plaintiff appeared for his first MSEPC hearing where he was placed him on academic probation, but allowed to retake the course and continue with his current cohort. (R. 55-2, pp. 11-13). Upon his fourth course failure and the PIR filed against him, Nehme was again brought before the MSEPC. (R. 55-6, ¶ 14). Rather than dismiss Nehme from the program as he had been previously advised was a possibility if he continued to perform poorly, Nehme was permitted to repeat Period

2 while remaining on academic probation despite serious concern with his academic performance. (R. 55-2, pp. 6-9).

Based on the poor academic performance on multiple shelf exams during Period 3 while on academic probation, as indicated *supra I*, Nehme was brought before his third MSEPC hearing. (R. 55-2, pp. 12-15). The MSEPC in its review packet had a cover page with a probation designation and color-coded spreadsheet of Nehme's poor performance on the Period 3 shelf exams. (R. 55-8, p. 7). Based on a review of his performance in the Period 3 shelf exams and his prior history of academic nonperformance, the MSEPC found that Nehme's academic performance continued to be of "grave concern" and recommended dismissal, consistent with FIU policies and earlier advisements of dismissal for continued poor academic performance. (R. 55-2, pp. 12-15). Notably, per the Handbook, repeating Period 3 was not an option for Nehme given he had repeated Period 2. (R. 55-7, p. 6).

The initial MSEPC recommendation for dismissal and the subsequent affirmations by the Appeals Committee and Dean Sackstein were based solely on his academic performance as Nehme admittedly made no prior indication that he was not properly accommodated or discriminated. (R. 55-1, p. 171) (R. 55-10, p. 4 ¶ 11). FIU's decision to dismiss Nehme from the program is thus fully supported by his academic record and the school's policies, warranting the summary judgment granted. *See Zainulabeddin*, 749 Fed. Appx. at 783.

Therefore, it cannot be said, as a matter of law, that Dr. Bejar on behalf of FIU acquired actual knowledge of harm to a federally protected right or that she failed to adequately respond upon receipt of the IDEA report. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1148 (11th Cir. 2014)(failure to provide accommodation alone does not support finding of deliberate indifference).[8]

## CONCLUSION

WHEREFORE, based on the foregoing reasons, Appellee, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully asserts that the District Court did not err in granting its Motion for Summary Judgment and Rejecting the Magistrate Judge's Report and Recommendation, and requests this Honorable Court to affirm the Order.

---

[8] For these same reasons described *supra II.B.ii.,* Appellant cannot establish that he was wrongfully dismissed because of his disability, and thus, fails to establish both elements two and three of his wrongful dismissal claim. In the instructive case, *Zainulabeddin,* the student handbook provided that a student was subject to dismissal from the program at any time if she had more than one failing grade at a time or failed any course while on academic probation. 749 Fed. Appx. 776, 778 (11th Cir. 2018). In her final year, the plaintiff failed two courses while on probation and then passed only with subsequent remediation. *Id.* This Court determined that no reasonable jury could conclude that the university discriminated against plaintiff because of her disability. *Id.* Summary judgment should be affirmed as to Count II because the MSEPC, the Appellate Committee, and Dr. Bejar's decisions to dismiss Nehme from the program was fully supported by his academic record and FIU's policies. *Id.* at 783; *see also Goldberg*, 838 Fed. Appx. 487 (11th Cir. 2020).

# <u>CERTIFICATE OF COMPLIANCE</u>

This Answer Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,930 words.

Furthermore, this Answer Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a monospaced typeface using Microsoft Word 2010 in Times New Roman and 14 point font.

Dated: <u>April 11, 2023</u>

<u>*/s/ Lourdes Espino Wydler*</u>
Lourdes Espino Wydler, Esq.
Lauren D. Martin, Esq.
*Attorneys for Appellee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I electronically filed the foregoing document with the Court of Appeals Clerk of the Court using CM/ECF on April 11, 2023, and conventionally filed the foregoing document with the Court of Appeals Clerk of Court via Fed Ex. I also certify the foregoing document is being served this day on all counsel of record identified in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

WYDLER LAW
*Attorneys for Appellee, Florida
International University Board of Trustees*
Douglas Centre, PH-4
2600 Douglas Road
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

BY  /s/  Lourdes Espino Wydler
     LOURDES ESPINO WYDLER
     Florida Bar No. 719811
     lew@wydlerlaw.com
     LAUREN D. MARTIN
     Florida Bar No. 1034166
     ldm@wydlerlaw.com

## SERVICE LIST

**Counsel for Plaintiff-Appellant:**
Roderick V. Hannah, Esquire
Roderick V. Hannah, Esq., P.A.
Florida Bar No. 435384
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN: 435384
rhannah@rhannahlaw.com
rvhannah@gmail.com
kflynn@rhannahlaw.com